[Civ. No. 30080. Second Dist., Div. Five. Aug. 23, 1967.]

PAUL GOODMAN et al., Plaintiffs and Appellants, v. CITIZENS LIFE AND CASUALTY INSURANCE CO., Defendant and Respondent.

Hillel Chodos for Plaintiffs and Appellants.

Parker, Stanbury, McGee, Peckham & Garrett and James A. Irwin for Defendant and Respondent.

HUFSTEDLER, J.—Plaintiffs appeal from a judgment denying them recovery on their complaint for declaratory relief and for damages for claimed breach of contract resulting from alleged wrongful termination by defendant of an agency contract.

The trial court found that a written agreement dated September 6, 1962, and the written addenda thereto "constituted the agreement between the parties in all basic, essential and material respects." The court further found the defendant did not terminate or attempt to terminate the agency contract and that the plaintiffs were not entitled to any damages for claimed breach of contract.

Plaintiffs contend that (1) the evidence was insufficient to

sustain the court's findings; (2) the court prejudicially erred in excluding evidence of a claimed oral agreement that plaintiffs' agency would not be terminable except for good cause; (3) the court erred in requiring plaintiffs to pay traveling expenses of defendant's counsel in connection with the taking of a deposition in Kansas City.

## Summary of the Evidence

Plaintiffs are both licensed insurance agents and brokers, who have been engaged since 1953 in the business of selling various kinds of insurance and some types of securities. Before 1960 they wrote occasional policies for defendant, but they did not have a contract with defendant. In 1960 plaintiffs executed a general agency contract with defendant, in which plaintiffs agreed to sell defendant's insurance policies to the general public either personally or through their sub-agents. The relationship under the 1960 contract continued until September of 1962. In the summer of 1962 defendant's administrative vice-president, Crim, proposed to the plaintiffs that plaintiffs should undertake work for defendant as "area supervisors" on a commission basis. Crim proposed that plaintiffs concentrate on soliciting persons to become general agents for the company rather than upon the direct sale of policies to the public, for which plaintiffs would be compensated by overriding commissions in a then unspecified amount on any business produced by general agents appointed by the plaintiffs. Plaintiffs would advance and bear all expenses incurred by them in building up the agency business. Plaintiffs accepted defendant's proposal. Shortly thereafter defendant submitted to plaintiffs a written agreement and an addendum dated September 6, 1962, which was executed not later than the end of September 1962 by both plaintiffs and the defendant. The September agreement appointed plaintiffs as defendant's general agent for the purpose of soliciting insurance applications and recruiting agents to solicit insurance business for the defendant. The agreement, together with the addendum, provided a commission schedule, including specifically a schedule of overriding commissions. The agreement contained a detailed termination clause providing in part, "This Agreement may be terminated with or without cause by either the Company or the General Agent upon thirty days' written notice to the other party." The September 6 agreement was modified from time to time in writing, the latest modification of which was dated April 15, 1964. In

each addendum there was a provision that the addendum formed a part of the agreement of September 6, 1962, and was subject to all the provisions of that agreement.

Pursuant to the agreement the plaintiffs began building a substantial organization and recruited agents for the defendant. In October or early November of 1962 plaintiff Goodman had a conversation with another insurance man, who told him that he had built a substantial agency for another insurance company and then had been fired suddenly for no particular reason. Goodman knew that the agreement he had signed was terminable with or without cause on 30 days' written notice. He realized that defendant could terminate the agency contract after the organization had been built up and that if defendant terminated the contract, he and plaintiff Inglott would lose the profits which would otherwise flow to them from the agency.

Plaintiffs succeeded in building a substantial organization to their own profit and to that of the defendant. The relationship was a harmonious one until June of 1964. One of the general agents appointed by plaintiffs was the Delger Corporation, a large securities dealer, with headquarters in Ogden, Utah. Delger for some time produced a substantial quantity of business for both plaintiffs and defendant. However, in May of 1964 Delger ceased placing its business with defendant for the announced reason that Delger disapproved of certain activities on the part of plaintiff Goodman. In early June of 1964 the president of defendant, McClure, found out that Delger refused to do business with defendant as long as Goodman was in any way connected with the Delger account. McClure got in touch with Goodman and asked him to release the Delger account. Goodman told him that before he agreed to release the Delger account, he wanted to talk to the head of Delger to see if he could get the matter straightened out. McClure told him that the arrangement would be satisfactory and that if Goodman could rejuvenate the account, more power to him. By June 15, 1964, Goodman had not contacted Delger and had made no effort to get the account back into production. On the latter date McClure called Goodman and told him that Mr. Goff, the head of Delger, was coming in to see him the following day and he would like to have plaintiffs' decision about relinquishing the Delger account by the time McClure talked to Goff. Plaintiff Goodman did not then give McClure any specific answer to McClure's request, but on June 16, 1964, in a meeting between plaintiffs and

McClure, plaintiffs told McClure that they would not aid defendant in redeveloping the business with Delger by releasing that account, unless some appropriate commission arrangement could be made with reference to other business to compensate them for the loss of overriding commissions on Delger's production. Efforts to negotiate their differences deteriorated during the conversation. Plaintiffs told McClure that they were going to quit and told him that they would take $250,000 in settlement at that time, but that the price would be higher later on. McClure's reception to the proposition was unenthusiastic. McClure told them either that they were terminated or would receive written notice of termination in the next morning's mail, or that he would probably have to send them a cancellation notice of their contract to resolve all the questions.

The morning after the conference, not having received any termination letter, plaintiffs sent McClure a telegram noting that no notice of termination had been received and inquiring about defendant's intentions. During the next two weeks plaintiffs and defendant exchanged correspondence. None of the letters contained a specific notice of termination. The conduct of the parties at the time can be described as an effort on both sides to jockey the other party into giving a termination notice. The efforts were unavailing: No notice of termination was ever sent.

The stalemate was broken by the plaintiffs' filing, on July 7, 1964, their complaint for declaratory relief and breach of contract. Both parties now agree that each has waived any right to insist upon receipt of 30 days' written notice as a condition precedent to contract termination.

### Sufficiency of the Evidence

Plaintiffs' contention that the evidence was insufficient to support the trial court's finding that the September 6 agreement, together with its addenda, constituted the basic agreement between the parties is not sustained by the record. Plaintiffs argue variously that the September 6 agreement and its addenda constituted no more than evidentiary memoranda affirming the existence of an oral agreement which does not purport to embody all the terms of the preexisting oral agreement and that the same documents are a part of a contract which was partly written and partly oral. On the basis of either one or both of these constructions of the documents, plaintiffs urge that the evidence showed without conflict that

the written agreement did not embody the true contract between the parties.

██ On appeal, of course, the task of the court is not to determine whether the trial court could have reached a conclusion other than that which it did on the basis of evidence submitted to it, but rather to ascertain whether any substantial evidence exists in the record to support the conclusions of the trial court. ██ The written documents themselves are substantial evidence that the documents embody the material terms of the contract between the parties. The instruments are coherent, apparently integrated documents. They do not purport to leave material terms for future negotiation. ██ "Obviously, the most certain criterion of the completeness of an individual writing will be found within the writing itself." (*Merkeley* v. *Fisk* (1919) 179 Cal. 748, 754 [178 P. 945].) Plaintiffs offer no real explanation of what function these documents served other than to frame the foundation of their contractual relationship with one another. Plaintiffs pleaded that the agreement of September 6 "did not accurately reflect the true terms and provisions of the contract between the parties, or the true nature of their relationship, but was intended to serve merely as a written memorandum of the fact that an agreement had been made between the parties." Plaintiffs neither pleaded nor proved what the "true agreement" was if it were not embodied principally in the written memoranda. Plaintiffs further pleaded that their "agreement was partly written and partly oral, and was subsequently modified from time to time by the parties, both orally and in writing." ██ The court found that the basic agreement was contained in the written contract with written modifications; the finding did not exclude the existence of minor oral modifications of the basic contract. Although there was some evidence that the parties did not follow in every respect the letter of the written agreements, that evidence did not compel the court to conclude that the departures had the effect of abrogating the written portions of the agreement.[1] At the most the evidence was relevant to construe portions of the agreement which were not in dispute.

### Excluded Evidence

Plaintiffs are fully aware that they cannot prevail unless they can find a supportable way to eliminate the critical

---

[1]The writings contained a provision that failure to insist upon compliance with all the terms of the agreement shall not constitute waiver thereof.

clause from the September 6 agreement permitting termination with or without cause by either party upon giving 30 days' written notice. To accomplish the excision the plaintiffs offered and attempted to offer evidence of a subsequent oral agreement which on a variety of theories, they urge, effected an alteration of the critical termination clause. The plaintiffs thus contend that: (1) the September 6 contract was abandoned and discharged and the parties entered into a new contract providing for termination only for good cause; (2) the termination clause was excised by an executed oral agreement substituting termination for cause in the place of termination at will upon giving written notice; and (3) the defendant was estopped to deny the oral modification of the written contract.

The focal point of the plaintiffs' attack upon the judgment is the claimed exclusion of evidence offered by the plaintiffs, characterized by the plaintiffs as follows: Plaintiffs "went to Citizens to complain about the at-will termination provision of their contract; . . . they had discussions with Crim on this matter; . . . they told Crim they could not continue and would not continue to expend their time, effort and money in building an agency organization for Citizens, unless they had some agreement—confirmed in writing—that their contract of agency would be non-terminable as long as they performed their obligations, nor except for good cause; . . . Crim agreed with their contentions, and . . . after consultation with McClure, entered into an oral agreement with them that their contract of agency would continue in effect so long as they performed their obligations, and . . . it would not be terminated except for cause; and . . . he [Crim] confirmed that oral agreement by letter dated November 14, 1962."

■ The trial court excluded part of the proffered evidence relating to the alleged oral agreement on the ground that the evidence was foreclosed by the parol evidence rule. The trial court found upon ample evidence that the written agreement embodied all essential terms of the contract. Even if the writings had not fully incorporated all of the terms of the bargain and the contract was therefore partially oral, the court did not err in excluding the proffered evidence because the claimed oral agreement contradicted the termination clause contained in that part of the agreement which was written. ■ "Where there has been a partial integration, parol evidence is admissible to prove that part of the contract not reduced to writing but is not admissible to vary or contra-

dict that part which is. (*Hulse* v. *Juillard Fancy Foods Co.*, 61 Cal.2d 571 [39 Cal.Rptr. 529, 394 P.2d 65]; *Sivers* v. *Sivers*, 97 Cal. 518, 521 [32 P. 571]; *Pierce* v. *Edwards*, 150 Cal. 650, 654 [89 P. 600]; *Keeler* v. *Murphy*, 117 Cal.App. 386, 390-391 [3 P.2d 950]; Rest., Contracts, § 239, p. 335; Wigmore, § 2430; Witkin, Cal. Evidence, § 361, p. 402; 18 Cal.Jur.2d, Evidence, § 258, p. 741.) *Wigmore*, in his discussion of this rule, states: '[O]bviously the rule against disputing the terms of the document will be applicable to *so much of the transaction as is so embodied, but not to the remainder.*' " (*Schwartz* v. *Shapiro*, 229 Cal.App.2d 238, at p. 250 [40 Cal.Rptr. 189].)

▇ Plaintiffs urge that the trial court erred in excluding evidence of the subsequent oral agreement because it tended to prove an oral agreement which discharged the prior contract between the parties and substituted the new oral agreement. This contention appears to be a theory developed for the first time on appeal. Even if we could overlook the delay in asserting the theory, it does not avail plaintiffs because there was no evidence introduced tending to prove that the parties prior to or at the time of the alleged oral agreement intended to extinguish their prior obligation and to substitute a new oral contract in its stead, and there was no evidence that either of the parties intended to abandon the prior contract between them. In order to sustain their contentions, the plaintiffs must show that the oral agreement constituted a novation. ▇ Novation in this setting is "the substitution of a new obligation between the same parties, with intent to extinguish the old obligation." (Civ. Code, § 1531.) The intention of the parties to extinguish the prior obligation and to substitute a new agreement in its place must clearly appear. (*Ayoob* v. *Ayoob* (1946) 74 Cal.App.2d 236, 250 [168 P.2d 462]; 1 Witkin, Summary of Cal. Law (7th ed. 1960) § 315, p. 340.) ▇ "Novation must be pleaded either expressly or 'by unequivocal implication,' and the burden of proof is 'upon the party asserting its existence.' . . . ▇ The 'question whether a novation has taken place is always one of intention' (*Producer Fruit Co.* v. *Goddard*, 75 Cal.App. 737, 755 [243 P. 686]), with the controlling factor being the intent of the obligee to effect a release of the original obligor on his obligation under the original agreement. (*Ayoob* v. *Ayoob*, 74 Cal.App.2d 236, 251 [168 P.2d 462].)" *Alexander* v. *Angel* (1951) 37 Cal.2d 856, 860 [236 P.2d 561]. ▇ According to plaintiffs' testimony the sole alteration which the plaintiffs

sought in their existing contract related to a change in the termination clause. Had the parties abandoned the prior contract and substituted the claimed oral agreement, the sole agreement would have consisted of a termination clause without any underlying contract.

Plaintiffs' primary argument to sustain the admissibility of the excluded evidence was that the evidence if received would have established an executed oral agreement modifying the termination clause.

Assuming, *arguendo*, that the evidence was admissible to attempt to prove plaintiffs' modification theory, no prejudice resulted to the plaintiffs by the exclusion of the evidence. Even if we assume that the rejected evidence was susceptible of the interpretation which the plaintiffs have put upon it, the evidence was insufficient to establish modification of a written agreement by an executed oral agreement. The oral agreement which the plaintiffs attempted to prove was not supported by any consideration or any substitute for consideration and it was incapable of unilateral execution.

Section 1698 of the Civil Code provides: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." To come within the provision permitting modification by an executed oral agreement the plaintiffs' evidence must be sufficient to establish all the elements of a contract and a contract which is capable of execution, at least unilaterally. At the time the alleged conversations took place the plaintiffs were under a legal obligation to perform services for the defendant, which obligation would continue until such time as either the plaintiffs or the defendant gave 30 days' notice in writing to terminate the contract. There is in the evidence offered and rejected no proof that the plaintiffs suffered the slightest legal detriment or that the defendant obtained any benefit to which it was not already entitled under the existing contract. Plaintiffs simply indicated their refusal to perform their existing obligations unless their demands were met. They did not purport to give up their own rights to terminate the contract upon written notice. They offered the defendant nothing to which the defendant was not already entitled. There was therefore no consideration for the agreement. Furthermore there was no substitute for consideration. There was no existing dispute between the parties or any other ground which could be urged to support the bargain. *D. L. Godbey & Sons Constr. Co.* v. *Deane* (1952) 39 Cal.2d 429 [246 P.2d 946],

does not help the plaintiffs. In *Godbey* the oral modification was made before performance was started, and there was a substitution of new rights and duties for the old. These factors are completely absent in the case at bench.

 Even if the plaintiffs could overcome the consideration hurdle, the contract for continuing services is not in its nature susceptible of complete execution before the contract is terminated. At the time the claimed oral agreement was entered, the performances to be rendered both by the plaintiffs and the defendant were continuing. Because the reciprocal obligations of the parties were continuing, performance on neither side can be considered executed. The oral modification is likewise incapable of execution on either side because it necessarily embodies continuing performance. (*Klein Norton Co.* v. *Cohen* (1930) 107 Cal.App. 325, 330-331 [290 P. 613].)

 The evidence was not admissible on the theory of estoppel. Estoppel was not pleaded. (E.g., see *Judelson* v. *American Metal Bearing Co.* (1948) 89 Cal.App.2d 256, 266 [200 P.2d 836] ; *Fleishbein* v. *Western Auto Supply Agency* (1937) 19 Cal.App.2d 424, 427 [65 P.2d 928].)

Plaintiffs correctly state that the exclusion of the claimed oral agreement ''struck at the very heart of [plaintiffs'] case.'' Unfortunately for the plaintiffs it was a heart that never beat. Even if the evidence had been received, it was insufficient to support any of the theories plaintiffs propounded to erase the termination clause. The trial court correctly found that the contract was terminable at will upon the giving of appropriate notice. Since we agree with the trial court's finding that the contract was thus terminable, it is unnecessary for us to decide whether the evidence adequately supports the trial court's further finding that defendant did not terminate the contract. Both parties agree that the contract was at an end at the time of trial and that each party had effectively waived the failure to give the required written notice. Since either party could terminate with or without cause, neither can now complain about which one was responsible for the ultimate termination.

### Error in Ordering Payment of Expenses

On August 7, 1964, plaintiffs noticed the deposition of Crim to be held in Kansas City, Missouri, on August 18, 1964. On August 12, 1964, the defendant noticed a motion to compel plaintiffs to pay defense counsel's travel expenses to attend the deposition of Crim. The motion was supported solely by a declaration of a member of the firm representing defendant,

stating that it would be "necessary for him to travel from Los Angeles, California, to Kansas City, Missouri, to represent the defendant at the taking of said deposition" and stating on information and belief the anticipated expenses for the trip. The sole authority cited in support of the motion was section 2019, subdivision (b)(1) of the Code of Civil Procedure. Over the plaintiffs' opposition the motion was granted by a judge other than the one who tried the case on the merits, and plaintiffs were ordered to pay $200 for such expenses.

Section 2019, subdivision (b)(1) of the Code of Civil Procedure provides that upon notice and for good cause shown the court may make certain protective orders with respect to the taking of depositions and that "the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression. In granting or refusing such order the court may impose upon either party . . . the requirement to pay such costs and expenses, including attorney's fees, as the court may deem reasonable." Under section 2019, subdivision (a)(1) of the same code, in the absence of a protective order, a party may depose any person as a matter of right. (*Carlson* v. *Superior Court* (1961) 56 Cal.2d 431, 437-438 [15 Cal.Rptr. 132, 364 P.2d 308]; *Beverly Hills Nat. Bank & Trust Co.* v. *Superior Court* (1961) 195 Cal.App.2d 861, 868-869 [16 Cal.Rptr. 236].)

Defendant argues that the trial court properly issued the order requiring payment of expenses within the authority granted to the court by section 2019, subdivision (b)(1) of the Code of Civil Procedure. The unspoken premise of the argument is that the defendant's motion for payment of expenses can be properly construed as an order protecting the defendant from "annoyance, embarrassment, or oppression." Although the premise is dubious, we assume *arguendo* that the motion was susceptible of the construction thus placed upon it by the defendant. ■ The further requirement of the section upon which defendant relies, however, is that there shall be "good cause shown" for the issuance of the order. "The concept of good cause . . . calls for a factual exposition of a reasonable ground for the sought order." (*Waters* v. *Superior Court* (1962) 58 Cal.2d 885, 893 [27 Cal.Rptr. 153, 377 P.2d 265]; *Carlson* v. *Superior Court, supra,* 56 Cal.2d 431, 440.) ■ The declaration filed in support of the motion sets forth no facts whatsoever in support of the motion. The sole statement in the declaration which is remote-

ly relevant is the expression of the conclusion that it would be "necessary" for defense counsel to travel to Kansas City. The statements in the declaration relating to anticipated expenses are made on information and belief. Statements in a declaration on information and belief are of no evidentiary value. (*Tracy* v. *Tracy* (1963) 213 Cal.App.2d 359, 362 [28 Cal.Rptr. 815].)

Although the trial court obviously had some discretion in determining what constitutes annoyance, embarrassment, or oppression, the granting of an order imposing expenses upon the plaintiffs in the absence of any facts tending to prove annoyance, embarrassment, or oppression was an abuse of its discretion.

The order compelling plaintiffs to pay $200 expenses to the defendant is reversed. In all other respects the judgment is affirmed. Defendant shall recover its costs on appeal.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied September 13, 1967, and appellants' petition for a hearing by the Supreme Court was denied October 19, 1967.