[L. A. No. 29677. In Bank. Apr. 2, 1970.]

CITY OF ONTARIO, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent; THOMAS S. DUCK et al., Real Parties in Interest.

## COUNSEL

O'Melveny & Myers, Rodney K. Potter and Rodney E. Nelson for Petitioner.

No appearance for Respondent.

Best, Best & Krieger and Arthur L. Littleworth for Real Parties in Interest.

## OPINION

**MOSK, Acting C. J.**—By this petition for writ of prohibition the City of Ontario (hereinafter called City) seeks to restrain respondent superior court from taking further proceedings in a taxpayers' suit filed by real parties in interest (hereinafter called plaintiffs). The matter is before us on an alternative writ issued by the Court of Appeal.

City contends the trial court abused its discretion in finding good cause to excuse plaintiffs' noncompliance with certain statutory requirements for publication of summons. As will appear, we conclude that City fails to sustain its burden of demonstrating such an abuse of discretion, and the writ must therefore be denied.

The allegations of the complaint in the underlying taxpayers' suit may be summarized as follows:

In 1966 a private contractor, Stolte, Inc., developed a plan to finance the construction of an automobile racing stadium in the City of Ontario by the device of tax-exempt bonds to be issued by a nonprofit corporation created by the municipality. Stolte obtained options on 800 acres of land, and City organized the Ontario (California) Motor Speedway Corporation as the nonprofit entity in question. Speedway Corporation had no independent staff; its activities were carried on by City personnel; and it could take no significant action without City approval. It was therefore a mere shell, the *alter ego* of City, and its acts were in fact those of City.

Stolte's options expired in January 1967, but a new scheme was then devised. On July 5, 1968, City caused Speedway Corporation to enter into an agreement with it, known as the Ontario Motor Stadium Agreement. That document, together with accompanying agreements, provided that Speedway Corporation would issue and sell, without voter approval, $25,500,000 of mortgage bonds to finance the purchase of the site and the construction of the stadium; Speedway Corporation would enter into a contract with Stolte, without competitive bidding, for the construction of the stadium at a cost of $12,500,000; and Speedway Corporation would then lease the stadium for a period of 50 years to a profit corporation called Ontario Motor Speedway, Inc., which would operate the facility as a private business venture. In turn, City agreed it would vacate and transfer title to streets in the stadium area to Speedway Corporation without further consideration. Finally, Speedway Corporation agreed to convey the land and the stadium to City upon the retirement of the bonds; their term was 30 years, however, and all payments of principal and interest were to be made out of the profits, if any, of operating the stadium; in case such profits became insufficient, the property would be publicly sold in a foreclosure proceeding.

In other causes of action it was alleged that Stolte had been reimbursed $257,386 out of the bond proceeds for its original options, which had become worthless; that even before entering into the Motor Stadium Agreement, City made two unauthorized loans of $5,000 on behalf of Speedway Corporation; and that City had paid and continued to pay a proportion of the salaries and expenses of numerous municipal employees involved in the venture.

The theory of the lawsuit was that the foregoing scheme and City participation therein were undertaken for the sole purpose of establishing

a commercial enterprise for the financial benefit of certain private parties, rather than for any public benefit, and were designed in such a manner as to evade legal restrictions placed on general law cities in this regard. In particular, the conduct complained of was alleged to violate various provisions of statutory law, as well as the constitutional prohibitions against making a gift of public funds or lending public credit for private purposes (Cal. Const., art. XIII, § 25).

The complaint prayed for three kinds of relief. First, an injunction was sought to restrain the parties from performing the various agreements described above, and from expending any other funds or doing any other acts in furtherance of the speedway project. Second, an order was requested to compel the parties to make restitution to the City of all money paid out for unlawful purposes in this connection. Third, plaintiffs prayed for a declaratory judgment to the effect that the entire scheme, including the bonds and accompanying agreements, was invalid.

The complaint was filed on August 1, 1968, i.e., only 24 days after the Motor Stadium Agreement was signed. It named as defendants the City and its councilmen, Speedway Corporation and its directors, the construction company, and the operating company. Summons in the usual form was served on each defendant in the manner provided in ordinary civil actions. Defendants did not raise any objection to this procedure, by demurrer, motion or otherwise; rather, they answered the complaint on its merits, and plaintiffs immediately began taking depositions.

On the 64th day after the filing of the complaint, however, City moved to dismiss the entire action on the ground that the summons did not conform to the special requirements of Code of Civil Procedure sections 861 to 863. Those sections are found in chapter 9 of title 10, part 2, of the code (§§ 860-870). In actions to which they are applicable—a subject we explore below—they require that the summons be directed in addition to "all persons interested in the matter" (§ 861.1), and be published in a newspaper of general circulation (§ 861); if publication is not completed within 60 days, the action must be dismissed "unless good cause for such failure is shown" (§ 863).

The motion to dismiss was argued at length in two days of hearings, and written briefs and declarations were filed. The court impliedly determined that the action was governed by sections 860-870, but expressly found that plaintiffs had shown "good cause" to excuse their failure to comply with sections 861 and 861.1. Accordingly, the court ordered that the motion be granted unless plaintiffs promptly complied with those sections; plaintiffs did so, and filed proof thereof with the court. City now seeks prohibition to review that ruling and to prevent further proceedings in the action.

## I

Code of Civil Procedure sections 860 to 870 (hereinafter referred to as chapter 9) were first enacted in 1961. The legislation was proposed by the Judicial Council, which explained that it had been "concerned for some years with the numerous statutes providing periods within which appeals may be taken at variance with the time for notice of appeal contained in the Rules on Appeal." (Judicial Council of Cal., 18th Biennial Rep. (1961), p. 114, fn. omitted.) In particular, the Council pointed to numerous scattered statutes authorizing actions by cities, counties, and public agencies to establish the validity of their bonds or assessments or the legality of their existence, and providing special procedures for appeals in such cases; some of the latter provisions, the Council noted, were of doubtful constitutionality (see, e.g., *In re Shafter-Wasco Irr. Dist.* (1942) 55 Cal.App.2d 484 [130 P.2d 755] [statute declaring that appeal may be taken within 30 days and "must be heard and determined within three months"]). It was therefore explained that "To bring these proceedings into conformity with the Rules on Appeal, to avoid constitutional questions, including those relating to the adequacy of the notice given, and to provide a simple, uniform procedure, the Judicial Council recommends that general legislation be enacted for determining the legality or validity of these matters, which will include the general provisions found in most of the existing statutes." The Council specifically warned, however, that "It is proposed that this legislation apply only when, and to the extent, it is made applicable by the statutes relating to a particular public agency, and the Judicial Council plans to present necessary amendments to such statutes during the Session. This would prevent the procedure from covering matters not studied by the Council which might be less adaptable to the procedure." (Judicial Council of Cal., *op. cit. supra,* p. 114, fn. omitted.)

As originally enacted, chapter 9 and its companion legislation respected the limited purpose of the Council. Section 860 provided that a public agency may bring an action within 60 days to determine the validity of any matter "which under any other law is authorized to be determined pursuant to this chapter." Implementing section 860, a variety of statutes relating to particular agencies were amended in the 1961 session to incorporate the provisions of chapter 9 by cross-reference. (See 36 State Bar J. (1961), pp. 717-718.) Each was limited, however, to specific agencies and specific proceedings, and most could be invoked only to validate bond issues or assessments, contracts with other agencies, or the existence of the agency itself. It was expected that similar amendments would be proposed in the future to extend the terms of chapter 9 to individual agencies and proceedings not covered by the original legislation, and that each such proposal would be considered on its merits.

From these humble beginnings, however, the validating statute appears to have grown far beyond the scope originally conceived by the Council. The change took place in 1963, with the enactment of Government Code sections 53510 and 53511. First, rather than limiting the validating procedure to specific agencies, section 53510 extended its availability to any "county, city, city and county, public district or any public or municipal corporation, public agency or public authority." It is difficult to imagine a local entity that would not fall within one or another of those categories. Second, rather than limiting this procedure to a specific class of acts by an agency, section 53511 extended chapter 9 to "an action to determine the validity of [the agency's] bonds, warrants, contracts, obligations or evidences of indebtedness." If, as the City here argues, the word "contracts" in section 53511 is taken to mean *any* contract into which the agency may lawfully enter, the far-reaching expansion of the statute becomes apparent. The vast majority of such an agency's dealings are necessarily undertaken by means of contracts; some involve routine ministerial matters, but others embody important policy decisions affecting the public at large.

The public's opportunity to challenge those decisions, moreover, is commensurately restricted by this legislation. Section 863 of chapter 9 provides that if the public agency does not initiate validating proceedings, "any interested person may bring an action within the time and in the court specified by Section 860 of this chapter to determine the validity of such matter." This seems innocuous enough, until one reads section 869: *"No contest* except by the public agency or its officer or agent of any thing or matter under this chapter *shall be made* other than within the time and the manner herein specified." (Italics added.) In other words, while section 863 says that an interested person "may" bring such an action, section 869 says he *must* do so or be forever barred from contesting the validity of the agency's action in a court of law. Yet no such restriction is placed on the agency itself, which is in effect authorized by section 869 to disregard the 60-day statute of limitations imposed by section 860.[1]

The practical consequence of this statutory scheme should be clearly recognized: an agency may indirectly but effectively "validate" its action *by doing nothing to validate it;* unless an "interested person" brings an action of his own under section 863 within the 60-day period, the agency's action

---

[1] This authorization is spelled out in the second sentence of section 869, added in 1963: "The availability to any public agency, including any local agency, or to its officers or agents, of the remedy provided by this chapter, shall not be construed to preclude the use by such public agency or its officers or agents, of mandamus or any other remedy to determine the validity of any thing or matter." (See, e.g., *Metropolitan Water Dist.* v. *Marquardt* (1963) 59 Cal.2d 159, 170-171 [28 Cal.Rptr. 724, 379 P.2d 28].)

will become immune from attack whether it is legally valid or not. Indeed, in the case at bar the City concedes this to be so. Thus a statute which begins by providing a remedy to be pursued by public agencies, expressly declaring it to be "in the nature of a proceeding in rem" (§ 860), concludes by making it unnecessary for such agencies to do anything at all, and the incidental or derivative remedy of an "interested person" turns out to be controlling. This is truly a case of the tail wagging the dog.

The phenomenon, we concede, was implicit in the original version of chapter 9, in which section 869 first appeared, drawn from preexisting statutes. But its effect on the taxpayers was greatly exacerbated by the enactment of Government Code sections 53510 and 53511 in 1963. Prior to that time the number of "interested persons" was likely to be few, proportionate to the limited applicability of chapter 9; and because of the special nature of the statutes involved, the "interested persons" were likely to have notice of the agency's action.[2] It was perhaps not inappropriate to impose a relatively brief statute of limitations on such individuals. But since 1963, if the City's construction of the word "contract" is correct, virtually every taxpayer has become an "interested person" with regard to virtually every action of a local public agency. It is unreasonable to assume that the members of such a large and amorphous group are likely to have prompt notice of each agency action affecting them. Yet whether such a person has such notice or not, he is given only 60 days in which (1) to discover the existence, scope and effect of the agency's action, (2) to reach a conclusion as to its validity, (3) to determine whether the agency has instituted a validating proceeding or imminently intends to do so, and (4) if not, to prepare and file a proceeding of his own. In an age of increasingly complex government, this seems a heavy burden to impose on the vigilant taxpayer. And it is certainly a far cry from the Judicial Council's original concern for conformity with the Rules on Appeal.

## II

The case at bar is dramatic indicium of the wisdom of the Council's plan to implement the general validating statute by carefully selected follow-up legislation.[3] As noted above, section 860 makes chapter 9 applicable to any matter which is authorized to be determined pursuant thereto "under any other law." The only possible "other law" in the present case is Government

[2]For example, Streets and Highways Code section 5265 expressly declared that an action to test the validity of a contract under the Improvement Act of 1911 may be brought by the agency "or by the contractor." The latter would obviously have notice of the contract in question.

[3]The Council did not support the 1963 enactment of Government Code sections 53510 and 53511.

Code sections 53510 and 53511. The question is whether those sections apply; as will appear, the answer is far from clear.

We meet at the outset the fact that both section 860 and Government Code section 53510 purport to govern only those validation proceedings which are brought by or against a *public* agency; manifestly, the bonds or contracts of a private corporation cannot be challenged by such means. In the present case, however, the bonds or contracts in issue are not those of City but of Speedway Corporation, a nonprofit company organized by City in 1966. City argues that Speedway Corporation is alleged in the complaint to be merely the *alter ego* of the City of Ontario and that its acts must be deemed those of City as well. Yet *alter ego* was only one of the theories pleaded; plaintiffs also alleged direct participation in the scheme by City acting through its officers and employees. Moreover, defendants themselves vigorously denied any such *alter ego* relationship; indeed, they have treated Speedway Corporation as a separate, private entity in order to avoid submitting its bonds to a public vote and its construction contract to competitive bidding.

On its face, section 53511 would seem to be applicable. It lists, as matters for validation under chapter 9, "bonds, warrants, *contracts*, obligations or evidences of indebtedness" (italics added). There is no limitation or qualification on the word "contracts," and it would therefore appear to include a multipurpose municipal contract such as the Ontario Motor Stadium Agreement. Yet the legislative history of the statute suggests a contrary result. First, the Legislative Counsel's digest of the bill proposing section 53511 characterized the measure as one allowing "a local agency to bring an action to determine the validity of evidences of indebtedness." Second, section 53511 was enacted as part of chapter 3 of part 1, division 2, title 5, of the Government Code. Chapter 3 is entitled "Bonds," and deals exclusively with the power of local agencies to sell their bonds, replace defaced or lost bonds, and pledge their revenues to pay or secure such bonds. If section 53511 was intended to be a provision of general application, logically it should have been placed in article 4 ("Miscellaneous") of chapter 1 ("General") of the same part, in which a group of such unrelated matters are collected. Third, the key language of section 53511—"bonds, warrants, contracts, obligations or evidences of indebtedness"—was taken directly from section 864 of chapter 9; under well-known canons of statutory interpretation, it should ordinarily be given the same meaning as it had in the earlier statute. But as a perusal of the companion 1961 legislation reveals, when chapter 9 was adopted it was made applicable only to such matters as the legality of the local entity's existence, the validity of its bonds and assessments, and the validity of joint financing agreements with other agencies. If section 53511 was intended to reach any and all

contracts into which an agency may lawfully enter, the restricted language of section 864 was inappropriate for that purpose. Finally, that language is peculiarly inapt for expressing such a general meaning in any event, as it lists the word "contracts" in the midst of four other terms which all deal with the limited topic of a local agency's financial obligations.

Turning from the language of the statutes to the relief prayed for in the complaint, still further difficulties are presented. The typical validating action seeks a declaratory judgment that the bonds, assessments, etc., of the agency are or are not valid; indeed, it is for this reason that section 860 characterizes the action it authorizes as "in the nature of a proceeding in rem." To the extent that plaintiffs in the present case prayed for a declaration invalidating the entire speedway scheme, including the bonds and accompanying agreements, the provisions of chapter 9 were arguably applicable. But plaintiffs also sought two other kinds of relief: (1) an injunction restraining the parties from spending any funds or doing any other acts in furtherance of the speedway project, and (2) an order compelling the parties to make restitution to City of all money unlawfully paid out in connection with the project.

Neither of these latter remedies owes its existence to chapter 9; indeed, each predates the enactment of that statute by many years. Plaintiffs' claim for injunctive relief is predicated on Code of Civil Procedure section 526a, which has provided since 1909 that "An action to obtain a judgment, restraining and preventing any illegal expenditure of . . . funds, or other property of a . . . city, . . . may be maintained against any officer thereof" by a taxpayer of such city. That is precisely the relief requested here. City argues that the matters sought to be enjoined are provided for in the Motor Stadium Agreement itself; this may be true in part, but other matters alleged go beyond the requirements of that agreement.[4] To the extent plaintiffs ask for injunctive relief unrelated to the performance of the terms of the Motor Stadium Agreement, no reason appears to deny them their normal and long-standing taxpayers' remedy. The Legislature obviously does not believe that chapter 9 somehow repealed section 526a by implication, for it recently took action on that very section.[5] The courts have continued, of course, to entertain taxpayers' suits; and in at least one case postdating the enactment of chapter 9, injunctive relief was au-

---

[4]For example, City's alleged intention to make all necessary off-site improvements at its own cost and to continue paying salaries and expenses of municipal employees involved in the venture.

[5]In 1967 the Legislature added the following language to section 526a: "An action brought pursuant to this section to enjoin a public improvement project shall take special precedence over all civil matters on the calendar of the court except those matters to which equal precedence on the calendar is granted by law." (Stats. 1967, ch. 706, § 1, p. 2080.)

thorized to prevent illegal expenditures under a contract entered into by the defendant public agency which was unrelated to bonds, assessments, or other financial matters. (*City of Hermosa Beach* v. *Superior Court* (1964) 231 Cal.App.2d 295, 300 [41 Cal.Rptr. 796].)

Plaintiffs' additional claim for restitution of public funds paid out for unlawful purposes also goes beyond the terms of the Motor Stadium Agreement: it is alleged, for example, that City made two unauthorized loans of $5,000 before entering into that agreement, and reimbursed Stolte some $250,000 for its worthless options. Nothing in the general validating statute contemplates such an in personam cause of action for repayment of public money unlawfully expended, and again no reason appears to deny plaintiffs their normal remedy in this regard.

In most large-scale public projects that a taxpayer may wish to challenge in the courts, some money will already have been spent and the authorities will be threatening future action more or less related to the project. The tripartite relief sought in this case would thus seem to be the rule rather than the exception. But what is such a plaintiff expected to do when faced with the strict requirements of chapter 9? Even if his principal complaint is the invalidity of the entire scheme, he may remain entitled to his traditional relief by injunction and restitution. Yet the statute of limitations in an ordinary taxpayers' suit is one year (Code Civ. Proc., § 526a), and there is nothing in the history or wording of chapter 9 or Government Code section 53511 to suggest they were intended to abrogate that rule *pro tanto* and to substitute the brief 60-day period of section 860. Nor can the in personam jurisdiction of injunction and restitution plausibly depend upon compliance with the elaborate in rem procedure for publication of summons prescribed in sections 861 to 863. To the extent the procedural requirements of chapter 9 are inappropriate to portions of the relief sought, can it be said categorically that the validating statute is "applicable" to the case?

### III

■ The foregoing considerations point to at least one clear conclusion: the question whether chapter 9 applies to the case at bar presents a "complex and debatable" issue. ■ It is settled that an honest and reasonable mistake of law on such an issue is excusable and constitutes good cause for relief from default under Code of Civil Procedure section 473. (*Viles* v. *State of California* (1967) 66 Cal.2d 24, 29 [56 Cal.Rptr. 666, 423 P.2d 818], and cases cited.) The same test governs a claim of good cause under section 863 of chapter 9: "The good cause which must be shown in such a case as this 'may be equated to good reason for a party's

failure to perform that specific requirement [of the statute] from which he seeks to be excused.' (*Waters* v. *Superior Court,* 58 Cal.2d 885, 893 [27 Cal.Rptr. 153, 377 P.2d 265].) ■ The rule is that 'a mistake as to the law does not require relief from default as a matter of law. (*Security Truck Line* v. *City of Monterey* (1953) 117 Cal.App.2d 441, 445 [256 P.2d 366, 257 P.2d 755].) ■ The issue of which mistakes of law constitute excusable neglect presents a fact question; the determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law. (*Fidelity Fed. Sav. & Loan Assn.* v. *Long* (1959) 175 Cal.App.2d 149, 154 [345 P.2d 568].) ■ Although an honest mistake of law is a valid ground for relief where a problem is complex and debatable, ignorance of the law coupled with negligence in ascertaining it will certainly sustain a finding denying relief.' (*A & S Air Conditioning* v. *John J. Moore Co.,* 184 Cal.App.2d 617, 620 [7 Cal.Rptr. 592].)" (*Community Redevelopment Agency* v. *Superior Court* (1967) 248 Cal.App.2d 164, 174 [56 Cal.Rptr. 201].) ■ Thus assuming arguendo that chapter 9 does apply to this case, a mistaken but reasonable decision by plaintiffs' counsel that it did *not* apply constitutes good cause for the trial court to permit belated compliance with its terms. Counsel are not expected to be omniscient, as the Legislature plainly recognized by writing the "good cause" exception into section 863.

City relies heavily on *Community Redevelopment,* but the case must be distinguished on its facts. There the plaintiffs filed an action in March 1966 seeking to have a redevelopment plan of a local agency declared invalid, but failed to comply with the summons procedure of chapter 9. In compelling dismissal by writ of mandate, the appellate court emphasized (1) that the governing statute spelled out the applicability of chapter 9 to those proceedings in great detail (Health & Saf. Code, § 33501, enacted in 1963)[6] and (2) that the issue had in any event been adjudicated in a prior reported decision (*Sibbet* v. *Board of Directors of Pasadena* (1965) 237 Cal.App.2d 731 [47 Cal.Rptr. 335]). Here, as we have seen, it is not unreasonable to construe the brief and largely inappropriate

---

[6]"An action may be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure to determine the validity of bonds and the redevelopment plan to be financed or refinanced, in whole or in part, by the bonds, or to determine the validity of a redevelopment plan not financed by bonds, including without limiting the generality of the foregoing, the legality and validity of all proceedings theretofore taken for or in any way connected with the establishment of the agency, its authority to transact business and exercise its powers, the designation of the survey area, the selection of the project area, the formulation of the preliminary plan, and the adoption of the redevelopment or renewal plan, and also including the legality and validity of all proceedings theretofore taken and (as provided in the bond resolution) proposed to be taken for the authorization, issuance, sale and delivery of the bonds and for the payment of the principal thereof and interest thereon."

language of Government Code section 53511 to exclude the operation of chapter 9 in this case, and there is no prior reported decision holding to the contrary.

As its last line of attack, City contends that even if the issue of law here presented is complex and debatable, plaintiffs have failed to prove any causal connection between that fact and their failure to comply with chapter 9. At the hearing on the motion to dismiss, City introduced documentary evidence to show that counsel for plaintiffs had invoked the procedures of chapter 9 in an earlier case, and hence were familiar with its terms. But plaintiffs do not deny such familiarity. City also concedes that counsel for plaintiffs must be presumed to have known of the provisions of Government Code sections 53510 and 53511. City asserts, however, that the record before the trial court contains no "evidence" that counsel for plaintiffs at any time decided such statutes were inapplicable to their case and acted on the basis of that decision.

The contention evinces a misunderstanding of City's role in these proceedings. The issues before the trial court were twofold: i.e., whether a complex and debatable question of law was presented, and whether counsel for plaintiffs acted in reasonable but mistaken reliance on their appraisal of that question. Neither issue required the formal introduction of evidence, whether oral or documentary; in particular, the latter turned on the understanding and intent of counsel, and for that purpose counsel's representations to the court would constitute sufficient "proof" to support its ruling. Here we do not know whether or to what extent such representations were made, as no reporter was present to transcribe the oral arguments on the motion. But that is City's fault, not plaintiffs'; City was the moving party in this important motion, and is charged with the responsibility of making a record adequate for review.

On this review, moreover, two well settled presumptions favor the ruling below: as in the case of a motion for relief from default under Code of Civil Procedure section 473, it is clear "First, that the power vested in trial courts . . . should be freely and liberally exercised to the end that cases shall be disposed of according to their substantial merits rather than upon mere technical matters of procedure, and secondly, that in matters of this sort the proper decision of the case rests almost entirely in the discretion of the court below, and appellate tribunals will rarely interfere, and never unless it clearly appears that there has been a plain abuse of discretion." (*Miller* v. *Lee* (1942) 52 Cal.App.2d 10, 15 [125 P.2d 627]; accord, *Brill* v. *Fox* (1931) 211 Cal. 739, 743-744 [297 P. 25]; *Higley* v. *Bank of Downey* (1968) 260 Cal.App.2d 640, 644-645 [67 Cal.Rptr. 365],

and cases cited.) On the record presented to us, City has failed to overcome those presumptions and to demonstrate a clear abuse of the trial court's discretion.

The alternative writ is discharged and the peremptory writ is denied.

Peters, J., Tobriner, J., and Sullivan, J., concurred.

**BURKE, J.**—I dissent. For the reasons set forth by Mr. Justice Tamura in the opinion prepared by him for the Court of Appeal, Fourth District, Division Two, and concurred in by Presiding Justice McCabe and Justice Kerrigan (reported in (Cal.App.) 78 Cal.Rptr. 746),[1] it is my opinion that

---

[1]Justice Tamura's opinion with deletions appropriate to this dissent, is as follows (brackets together, in this manner [ ], are used to indicate deletions from the opinion of the Court of Appeal; see *Simmons* v. *Civil Service Emp. Ins. Co.* (1962) 57 Cal.2d 381, 383, fn. 1 [19 Cal.Rptr. 662, 369 P.2d 262]):

[ ] The two issues are (1) whether the pending action is governed by sections 860-870, and (2) whether there was sufficient evidence to support the finding of "good cause" for noncompliance with those sections.

I

The trial court determined, by implication, that the action was subject to the provisions of sections 860-870. Plaintiffs, nevertheless, contend that the action was simply a traditional taxpayers' suit brought pursuant to section 526a of the Code of Civil Procedure because (1) the action was not merely one attacking the validity of the motor stadium agreement; (2) the bonds sought to be invalidated are those of a nonprofit organization and not of the municipality; and (3) section 53511 of the Government Code is applicable only to contracts on indebtedness and not to contracts generally.

Contrary to plaintiffs' assertion, the essence of the action is its attack on the validity of the motor stadium agreement. Plaintiffs rely upon allegations of the complaint attacking the commitment of the City to vacate streets and to convey title thereto without consideration to the nonprofit corporation, the validity of the construction contracts awarded by the nonprofit corporation without competitive bidding, and the validity of the mortgage revenue bonds issued without voter approval. Those matters, however, are all inextricably a part of the motor stadium agreement. The agreement requires the City to vacate streets no longer required by reason of the construction of alternate streets and to convey title thereto to the nonprofit corporation; obligates the nonprofit corporation to cause the stadium to be constructed in accordance with a contract entered into between it and Stolte, Inc.; and expressly provides that by entering into the agreement, the City approves the financing of site acquisition and construction by issuance of mortgage revenue bonds and the operation of the stadium by leasing it to the profit corporation.

The contention that the action does not come within the scope of section 53511 of the Government Code because the bonds, trust indentures, construction contract and operating lease were acts of the nonprofit corporation and not those of the City is not persuasive. The complaint is framed on the theory that the nonprofit corporation is but a corporate shell, that it can only act with approval of the City, that it is in fact but the alter ego of the City, and that its acts are the acts of the City and

this action is governed by sections 860 to 870 of the Code of Civil Procedure, and that plaintiffs failed to show good cause for not complying with those sections. Accordingly, I would issue the peremptory writ of

---

subject to the constitutional and statutory limitations pertaining to municipal corporations. Plaintiffs may not base their cause of action against the City on those allegations and yet disavow them when resisting a motion to dismiss. The conclusion is inescapable that the essence of the action is its attack upon the validity of the "Motor Stadium Agreement"; the entire scheme or plan sought to be invalidated is embodied in that agreement.

Plaintiffs contend that the word "contract" as used in section 53511 was intended to be limited to contracts of indebtedness and not to contracts such as the "Motor Stadium Agreement." In support of their contention they refer to the legislative counsel' Digest of Assembly Bill 1737, which added section 53511 to the Government Code, as a bill allowing ". . . a local agency to bring an action to determine the validity of evidence of indebtedness pursuant to the provisions of the Code of Civil Procedure."

While such legislative material may be of assistance where it is consistent with a reasonable interpretation of a statute (*Maben* v. *Superior Court*, 255 Cal.App.2d 708, 713 [63 Cal.Rptr. 439]), it is not controlling where the statutory language is clear. (See *Taylor* v. *Lundblade*, 43 Cal.App.2d 638, 641 [111 P.2d 344].) The interpretation urged by plaintiffs would render the word "contract" in section 53511 of the Government Code superfluous. Furthermore, it is apparent that in enacting section 53511, the Legislature intended thereby to authorize cities to utilize the validating procedure of sections 860-870 for all of the purposes for which that procedure was designed. The matters listed in section 53511 of the Government Code are identical to the matters described in section 864 of the Code of Civil Procedure prescribing the time when such matters shall be deemed to be in existence for the purpose of sections 860-870. Both section 53511 of the Government Code and section 864 of the Code of Civil Procedure list "bonds, warrants, contracts, obligations and evidences of indebtedness." In recommending enactment of sections 860-870, the Judicial Council took note of the various statutes then in existence dealing with specific public agencies and districts authorizing actions to determine the validity of various matters, including contracts. (18th Biennial Report of the Judicial Council, *supra*.) The council report clearly indicates that the uniform procedure recommended for adoption was designed to be used for the validation of contracts generally, as well as contracts of indebtedness. The Legislature has so construed those sections (see, e.g., Wat. Code, § 50979) and they have been so utilized (*Clark's Fork Reclamation Dist.* v. *Johns* 259 Cal.App.2d 366 [66 Cal.Rptr. 370]).

We conclude that the matters mentioned in section 53511 of the Government Code clearly encompass municipal contracts of the character exemplified by the "Ontario Motor Stadium Agreement."

II

Plaintiffs contend that the trial court was justified in finding that "good cause" has been shown within the meaning of section 863 for failure to publish summons in the form and within the time required by statute.

The concept of "good cause" calls for a "factual exposition of a reasonable ground for the sought order." (*Waters* v. *Superior Court*, 58 Cal.2d 885, 893 [27 Cal.Rptr. 153, 377 P.2d 265]; *Goodman* v. *Citizens Life & Cas. Ins. Co.*, 253 Cal.App.2d 807, 819 [61 Cal.Rptr. 682]; *Community Redevelopment Agency* v. *Superior Court*, 248 Cal.App.2d 164, 174 [56 Cal.Rptr. 201].) Where the law empowers the court to

prohibition restraining respondent court from taking any further proceedings in the main action, other than to order its dismissal, but without prejudice to any right plaintiffs may have to bring an independent action respecting matters included in the complaint which may not be subject to

excuse failure to comply with a specific statutory requirement on a showing of good cause, an honest mistake of law may constitute good cause depending upon the "reasonableness of the misconception and the justifiability of lack of determination of the correct law." (*Community Redevelopment Agency* v. *Superior Court, supra; Fidelity Federal Sav. & Loan Assn.* v. *Long,* 175 Cal.App.2d 149, 154 [345 P.2d 568].) An honest mistake of law is ground for relief where a problem is "complex and debatable," but "igorance of the law coupled with negligence in ascertaining it" will not justify relief. (*Community Redevelopment Agency* v. *Superior Court, supra.*)

Plaintiffs contend that their failure to comply with sections 860-870 was excused because the question whether the procedure there prescribed was applicable to the pending action presented a "complex and debatable problem."

In *Community Redevelopment Agency* v. *Superior Court, supra,* 248 Cal.App.2d 164, the court determined that a showing similar to the one made by plaintiffs in the instant case was insufficient to establish "good cause" within the meaning of section 863 of the Code of Civil Procedure [ ] [and] observed that mere failure of counsel to recognize at the time he filed the complaint that the procedure for determining the validity of the challenged matter was controlled by sections 860-870 of the Code of Civil Procedure did not justify a finding of "good cause."

Plaintiffs in the present case presented no evidence from which it could have been found that there was an honest mistake of law based upon a reasonable misconception of the law and justifiable lack of determination of the correct law. In fact, plaintiffs presented no evidence whatsoever on the issue of "good cause" for failure to comply with sections 860-870. The declaration that the depositions which had been taken by plaintiffs supported the allegations of the complaint merely tended to show that there was good faith in filing the action, not "good cause" for noncompliance with the statutory procedure. Plaintiffs contend, however, that the deficiency in proof was supplied by their memorandum of authorities. They urge that the only possible method of demonstrating that the question whether the action fell within the scope of sections 53510, 53511 of the Government Code and sections 860-870 presented a "complex and debatable question," was by a legal memorandum. The difficulty with plaintiffs' position is that they failed to introduce any evidence showing that prior to the filing of the action and the issuance of summons, they considered the applicability of the validating procedure prescribed by sections 860-870 and determined not to follow it in the honest belief that it was inapplicable. The mere fact that a problem is "complex and debatable," in and of itself, is insufficient to constitute "good cause" for failure to comply with statutory requirements.

The provisions of sections 860-870 had been made applicable to contracts and obligations of cities in 1963 (Gov. Code, §§ 53510, 53511), over five years prior to the institution of the pending action. (*Community Redevelopment Agency* v. *Superior Court, supra,* (1967) 248 Cal.App.2d 164, delineating what must be shown to constitute "good cause" under section 863 of the Code of Civil Procedure, and *Sibbet* v. *Board of Directors of Pasadena* (1965) 237 Cal.App.2d 731 [47 Cal.Rptr. 335], deciding the [ ] effect of noncompliance with section 863 had been on the books long prior to the commencement of the pending action. In these circumstances, plaintiffs' showing was insufficient to constitute "good cause."

Plaintiffs having failed to show "good cause" for failure to comply with sections 860-870, the court had no jurisdiction other than to order dismissal. (Code Civ. Proc., § 863.) The original summons having been defective in form and not having been

the provisions of Government Code section 53511 and sections 860 to 870 of the Code of Civil Procedure.

McComb, J., concurred.

published within the prescribed period, the publication of an amended summons after the expiration of the statutory period could not confer jurisdiction. (*Community Redevelopment Agency,* v. *Superior Court, supra,* 248 Cal.App.2d 164, 180.) [ ]