[No. G000352. Fourth Dist., Div. Three. Mar. 4, 1985.]

ROBERT MITCHELL et al., Plaintiffs and Appellants, v.
COUNTY OF ORANGE et al., Defendants and Respondents.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976(b), parts III, IV, and VI are not published, as they do not meet the standards for publication.

**COUNSEL**

Rutan & Tucker, Leonard A. Hampel and Kathryn L. Tobin for Plaintiffs and Appellants.

Adrian Kuyper, County Counsel, and John R. Griset, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**SONENSHINE, Acting P. J.**—The Mitchells appeal a judgment denying their petition for writ of mandate. They further allege the court erred in refusing to issue a statement of decision.

The Mitchells own property at the intersection of Newport Avenue and Foothill Boulevard in Orange County. It contains a historic ranch house, currently used as a detoxification center, and several other buildings.

In June 1981 the Orange County Board of Supervisors authorized its environmental management agency to prepare the North Tustin Specific Plan (NTSP). The project was undertaken in response to increased noise and traffic along 17th Street and Newport Avenue. The proposed plan designated the majority of the parcels fronting on Newport Avenue, running north from 17th Street, as medium low density single family use (for which the areas were *then* being utilized).

The Orange County Planning Commission held public hearings on the NTSP and its attendant environmental impact report (EIR). The Mitchells, desiring permission to convert their property to professional office use, attended and participated in the public hearings and also corresponded with the appropriate agencies.

Minutes of the Orange County Planning Commission meeting in August 1982 indicate the Mitchells' property was one of a group of "detailed review" parcels examined to determine "the most appropriate means for achieving the timely recycling of certain properties in a manner responsive to environmental factors present." The planning chief stated the Mitchells' property "was reviewed and considered well suited to remain medium/low density . . . ." Another staff member reported in response to comments at an earlier meeting and "stated the more intense uses will not migrate further north [from the intersection of 17th and Newport] since the uses are established." The hearing was then opened to the public, with Mrs. Mitchell again requesting redesignation of her property. A senior planner "stated the *100 page comments* from Mr. and Mrs. Mitchell was [*sic*] based on their interpretation of the Noise Element. He discussed the county's interpretation of the Noise Element." (Italics added.) Following discussion, including consideration of a development agreement submitted by the Mitchells, the commission moved to certify the NTSP EIR and recommend approval by the board of supervisors, but suggested the Mitchells' parcel be redesignated to garden office use.

In September 1982 the board approved the NTSP, found it was compatible with the county's general plan, and further determined the process leading to its adoption and that of the EIR complied with the California Environmental Quality Act (CEQA). It did *not,* however, approve redesignation of the Mitchells' property.

The Mitchells contend the NTSP is inconsistent with the general plan's noise and land use elements. They further claim certification of the EIR and approval of the project were in violation of CEQA.

# I

## STATEMENT OF DECISION

■ The Mitchells insist they were entitled to their requested statement of decision pursuant to Code of Civil Procedure section 632.[2] However, the request, made on the 10th day after the court's notice of intended decision, was timely only if the trial is deemed to have lasted more than one day.

The parties appeared at the hearing on the afternoon of March 9. The clerk was unable to locate the Mitchells' exhibits. As no witnesses were contemplated, the court entertained short opening statements and adjourned the matter until 11 a.m. the following morning.

Final argument consumed one hour in the morning and a short period in the afternoon of the 10th. The court took the matter under submission; there was no request for a statement of decision at that time.

By letter of March 14 the court announced its decision to deny the writ. On March 24 the Mitchells requested a statement of decision which the court denied as untimely and inappropriate.[3] We agree with the court. The "trial" consisted entirely of counsels' arguments and apparently lasted, in total, less than three hours. This estimate is based on the Mitchells' counsel's presentation from 11 a.m. until the noon recess, reproduced in 18 pages of transcript. The subsequent 20 pages from the afternoon session must therefore represent approximately an additional hour, while the previous day's transcript (12 pages) represents less than an hour expended.[4] This entire matter lasted *in court* considerably less than one day.

By analogy we note one court's interpretation of the term "the time of the trial" contained in former section 632. The term "was to be construed according to its 'customary meaning,' which is 'that it refers to the period

---

[2]Section 632 provides in pertinent part: "In superior, municipal, and justice courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. Upon the request of any party appearing at the trial, made within 10 days after the court announces a tentative decision, or if the trial has lasted less than one day, made prior to submission of the matter for decision, the court shall issue a statement of decision . . . ."

[3]The court's response read as follows: "The Court has received a Request for Statement of Decision in the above matter. I have no recollection of a Request for Statement of Decision having been made prior to submission and, inasmuch as this was a hearing which lasted less than a day, the present request is untimely. Moreover, since this was not a trial of the question of fact, it is the court's opinion that the request is inappropriate."

[4]It should be noted the one hour (as equal to approximately 18 pages) consisted entirely of argument by the Mitchells' counsel. Thus we do not deal with an unrealistic "equation" since this counsel also accounted for the bulk of the remaining argument.

of time, *in the courtroom,* during which the trial itself is taking place' [citation]." (*Zenker-Felt Imports* v. *Malloy* (1981) 115 Cal.App.3d 713, 720 [171 Cal.Rptr. 482], italics added.)

Had the hearing lasted five minutes on day one (continued to find necessary documents) and been concluded in five minutes on day two, it would be unreasonable to conclude the trial *lasted more* than one day. The clear purpose of the statute is to provide for speedier resolution of short matters. This three-hour hearing does not lose its short matter quality by virtue of the required continuance. The court properly found the request for statement of decision was untimely.[5]

## II

### STANDARD OF REVIEW

The parties agree the substantial evidence test is the appropriate standard in analyzing CEQA requirements. However, the Mitchells argue the same test applies to a determination of whether the NTSP comports with the general plan. The county insists this review is limited to a determination of whether the county's actions were arbitrary, capricious or failed to follow the proper procedures.

### A. CEQA

To the extent the issues involve the EIR's or board's compliance with the dictates of CEQA, "[t]he inquiry shall extend only to whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence." (Pub. Resources Code, § 21168.5; *Cleary* v. *County of Stanislaus* (1981) 118 Cal.App.3d 348, 352-353 [173 Cal.Rptr. 390].) However, we do " '*not* have the duty of passing on the validity of the conclusions expressed in the EIR, but only on the sufficiency of the report as an informative document. . . .' " (*Twain Harte Homeowners Assn.* v. *County of Tuolumne* (1982) 138 Cal.App.3d 664, 673 [188 Cal.Rptr. 233].)

---

[5]Quibbling over the number of hours expended is unnecessary because the process is so simple—a mere oral request "made prior to submission of the matter . . . ." (Code Civ. Proc., § 632.)

Because the request was untimely, we do not reach the question of the standard for reversal for failure to issue a statement of decision. (*Miramar Hotel Corp.* v. *Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126 [210 Cal.Rptr. 114].)

## B. Compliance of NTSP with County's General Plan

■ The Mitchells' contention a specific plan's compliance with the general plan must also be reviewed under this standard is based on a lengthy quotation from *Guardians of Turlock's Integrity* v. *Turlock City Council* (1983) 149 Cal.App.3d 584 [197 Cal.Rptr. 303]. It provided in part, "the Legislature intended that judicial review of the determination whether an EIR and project comports with the general plan is to be decided on the basis of the substantial evidence test." (*Id.,* at p. 598.) As impressive as that paragraph is, the Mitchells failed to note the court's subsequent *deletion of that entire paragraph* in *Guardians of Turlock's Integrity* v. *Turlock City Council* (1984) 150 Cal.App.3d 1141c, filed one month after the original opinion. In the modification, the court noted, "We need not determine whether the applicable standard of review of the consistency of the [subject] Project with the Turlock general plan should be according to the substantial evidence test or the broader 'arbitrary and capricious' test applicable to quasi-legislative actions . . . ." (*Id.,* at p. 1141d.) The court then suggested that had the particular set of facts been before it (an individual parcel owner made application for a zoning change which required preparation of an EIR and approval of his project by the city), the substantial evidence test would have been proper.

■ "[W]e note that while zoning is unquestionably a legislative act, 'a variety of administrative land use decisions, including the granting of a variance [citation], the granting of a use permit [citation], and the approval of a subdivision map [citation],' have been classified as adjudicative, and thus reviewable by the substantial evidence test. [Citations.] We find that the decision as to whether a particular project is consistent with a general plan involves 'the application of standards . . . to *individual parcels*' which renders that decision adjudicatory, and thus subject to the substantial evidence test on judicial review." (*Ibid.,* italics added.)

■ However, the California Supreme Court has held "that the adoption of a specific plan [like a general plan and its amendments] by the [board] was a legislative act . . . ." (*Yost* v. *Thomas* (1984) 36 Cal.3d 561, 571 [205 Cal.Rptr. 801, 685 P.2d 1152].) Judicial review of "[a]ctions taken by an administrative agency in its legislative capacity . . . is limited to an examination of the proceedings before the agency to determine whether its action has been arbitrary or capricious, or entirely lacking in evidentiary support, or whether it has failed to follow the procedure and give the notices required by law." (*Karlson* v. *City of Camarillo* (1980) 100 Cal.App.3d 789, 798 [161 Cal.Rptr. 260].) The specific plan must comport with the general plan but that requirement does not modify the standard of review. "The judgment decision rests with the [board] and will not be set aside

unless the [board] acted arbitrarily, capriciously or without any evidentiary basis." *(Id.,* at p. 801.)

## III*

. . . . . . . . . . . . . . . . . . . . . . . .

## V

### Request for CEQA Hearing

■ County contends there was no violation of CEQA, but insists we need not address the issues because the Mitchells failed to request a timely hearing. Public Resources Code section 21167.4 provides: "In a writ of mandate proceeding alleging noncompliance with this division, the petitioner shall request a hearing within 90 days of filing the petition or otherwise be subject to dismissal on the court's own motion or on the motion of any person interested therein." The Mitchells filed their petition on October 22, 1982. Their notice of and request for hearing was filed January 20, 1983, or 90 days later.

The county would have us interpret the statute's language to require the hearing to be *calendared* within the 90-day time frame. However, such a construction ignores the plain meaning of the word "request." Had the Legislature intended the *hearing* to be held within 90 days it could have so provided. "Words and phrases are construed according to the context and approved usage of the language . . . ." (Code Civ. Proc., § 16.) We find the statute must be construed to mean the petitioner need only file a *request* for a hearing within 90 days of filing the petition.

## VI†

. . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed. Respondents to receive costs.

Crosby, J., and Wallin, J., concurred.

---

*See footnote 1, *ante,* page 1185.
†See footnote 1, *ante,* page 1185.