[No. E013090. Fourth Dist., Div. Two. Mar. 22, 1994.]

BOARD OF SUPERVISORS OF RIVERSIDE COUNTY et al.,
Petitioners, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
TEMECULA RANCHOS, Real Party in Interest.

**COUNSEL**

William C. Katzenstein, County Counsel, Lorenz, Alhadeff, Cannon & Rose and Steven W. Winton for Petitioners.

No appearance for Respondent.

Best, Best & Krieger, Michelle Ouellette and Meredith Jury for Real Party in Interest.

**OPINION**

**TIMLIN, Acting P. J.**—The underlying action to which this writ petition relates is a mandamus and a declaratory and injunctive relief proceeding brought by Temecula Ranchos against the County of Riverside (County), in which Temecula Ranchos challenges County's approval of a residential

housing project on the basis that County improperly determined that the project will not have a significant effect on the environment and issued a negative declaration to that effect as to the project. The question presented by the petition filed in this court is whether Temecula Ranchos complied with the statutory requirements for service of its petition for administrative mandamus under Public Resources Code section 21167 (petition) contained in Public Resources Code section 21167.6, subdivision (a).[1] We conclude that the latter section of the Public Resources Code does establish the procedure for obtaining jurisdiction over County in the underlying action, but that the failure to personally serve the petition on County within the specified period was not fatal to Temecula Ranchos's action.

## I

### PROCEDURAL HISTORY OF THE UNDERLYING ACTION

The procedural history of the underlying action is not subject to dispute. County filed the negative declaration on January 28, 1993, and posted notice on January 29. On February 25, 1993, Temecula Ranchos gave written notice to County of its intent to commence the action, and then filed its petition on February 26, 1993. On March 3, 1993, Temecula Ranchos served County with conformed copies of the summons[2] and petition, the "Notice of Commencement," and a "Request for Preparation of Record of Proceedings." This service was made by mail and there is no contention that it

---

[1]In pertinent part, section 21167.6 provides as follows (italics supplied): *"Notwithstanding any other provision of law,* in all actions brought pursuant to Section 21167, except those involving the Public Utilities Commission:

"(a) At the time the action is filed, the petitioner shall file a request that the respondent public agency prepare the record of proceedings relating to the subject of the action. *The request, together with the petition, shall be served upon the public agency not later than 10 business days after the action is filed.*

"(b)(1) The public agency shall prepare and certify the record of proceedings not later than 60 days after the request specified in subdivision (a) is served upon the public agency. . . .

"(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) The time limit established by subdivision (b) may be extended only upon stipulation of all parties who have been properly served in the action or proceeding or upon order of the court. . . .

"(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) The clerk of the superior court shall prepare and certify the clerk's transcript on appeal not later than 60 days after the notice designating the papers or records to be included in the clerk's transcript is filed with the superior court . . . .

"(f) Extensions of the period for the filing of any brief on appeal may be allowed only by stipulation of the parties or by order of the court for good cause shown. Extensions shall be limited . . . .

"(g) . . . . . . . . . . . . . . . . . . . . . . . . . . ."
(Italics added.)

[2]As we discuss below, the statutes do not appear to require that a summons be served in mandamus proceedings. (See fns. 8, 10, *post.*)

complied with any of the substituted service provisions of the Code of Civil Procedure.[3]

Temecula Ranchos then filed an amended petition on March 23. This petition was personally served on County on March 29, and there is no contention that this service did not comply with the personal service requirements of the Code of Civil Procedure. On April 29, County moved to quash service of "summons," which motion was directed to the purported service of the petition on March 3, 1993. It also moved to dismiss the action.[4] (Code Civ. Proc., § 418.10.) It argued that as to California Environmental Quality Act actions commenced under Public Resources Code section 21167, subdivision (b), Public Resources Code section 21167.6(a) sets a 10-business-day time limit for personal service of the petition, which time limit is jurisdictional. As Temecula Ranchos had not accomplished proper service on County within this period, County claimed that it was entitled to a dismissal. Presumably County intended that the court should also quash the second service made on March 29 as untimely, although the motion was not entirely clear on the requested relief.

In response, Temecula Ranchos argued that section 21167.6(a) is a statute governing notice, not jurisdiction, and that under the service provisions of the Code of Civil Procedure its personal service of the amended petition on March 29 was both timely and effective for jurisdictional purposes.

The trial court found that the service requirement of section 21167.6(a) was not jurisdictional, thus agreeing with Temecula Ranchos. Accordingly, it denied County's motion and this petition followed.

II

DISCUSSION

A. *General Principles Applicable in Interpreting CEQA Statutes*

The specific issue before us is whether Public Resources Code section 21167.6(a) provides the exclusive service procedure by which a

---

[3]In this opinion, we refer extensively, and exclusively, to the Code of Civil Procedure and the Public Resources Code. We will frequently specify the code intended in a statutory reference, but, in the interests of stylistic simplicity, we may omit such specification where the context makes the intended reference clear. We also generally delete the awkward repetition of subdivision references in the text, and refer, for example, to "section 21167.6(a)."

[4]Improper or invalid service is challenged by a motion to quash, but if a mandatory time period has expired and no valid service can be made, a motion to dismiss is also proper. (See *Mannesmann DeMag, Ltd.* v. *Superior Court* (1985) 172 Cal.App.3d 1118, 1124-1125 [218 Cal.Rptr. 632].)

petitioner under section 21167 acquires jurisdiction over a public agency, or whether it serves only a notice function and does not supersede the general provisions of the Code of Civil Procedure with respect to service and the time limits within which it must be accomplished.

It is axiomatic that if statutory "language is . . . clear and unambiguous there is no need for construction." (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744].) In our view, the statute under consideration is not unequivocal as to service of the petition and the method thereof on the public agency so as to have caused the trial court to have jurisdiction over the agency. Thus, we attempt to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Estate of MacDonald* (1990) 51 Cal.3d 262, 268 [272 Cal.Rptr. 153, 794 P.2d 911].) In so doing, we strive to reach a reasonable result and to avoid absurdities. (*In re Eric J.* (1979) 25 Cal.3d 522, 537 [159 Cal.Rptr. 317, 601 P.2d 549].) In this case, neither of the proposed interpretations by the parties is absurd or unreasonable, and the intent of the Legislature cuts both ways.

■ We begin our analysis with observations concerning the overall purpose and structure of the California Environmental Quality Act (CEQA or Act), Public Resources Code section 21000 et seq. Temecula Ranchos points out that CEQA was obviously designed and enacted with the intent to protect the environment, and that it has often been interpreted to provide as wide a protection as possible. The Supreme Court has repeatedly confirmed that CEQA is " 'to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.' " (*Laurel Heights Improvement Assn.* v. *Regents of the University of California* (1988) 47 Cal.3d 376, 390 [253 Cal.Rptr. 426, 764 P.2d 278], quoting *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].)

However, while these precepts are validly applied to the substantive merits of challenges brought under CEQA, in which it is asserted that certain projects will or may have a significant effect on the environment, that does not mean that the same standard of liberality should necessarily be applied in interpreting the procedural requirements of the Act. The Act contains a number of provisions evidencing the clear "legislative determination that the public interest is not served unless challenges under CEQA are filed promptly" (*Oceanside Marina Towers Assn.* v. *Oceanside Community Development Com.* (1986) 187 Cal.App.3d 735, 741 [231 Cal.Rptr. 910]), and the same policy must certainly be said for similar provisions which require that a CEQA action, once filed, be diligently prosecuted and heard as soon as reasonably possible.

Thus, Public Resources Code section 21167 establishes statutes of limitations governing various CEQA challenges; these statutes run from 30 to 180 days—periods of far shorter duration than the typical civil statute of limitations controlling common civil actions. (Cf. Code Civ. Proc., §§ 337, subd. 1—four years on written contract, 338, subd. (b)—three years for trespass or injury to real property, 340—one year for personal injuries.) Public Resources Code section 21167.8, subd. (a) requires that a settlement conference be scheduled within 20 days after the petition is served, and held within 45 days of service. Public Resources Code section 21167.4 requires the petitioner in a CEQA proceeding to request a hearing on the petition within 90 days of its filing, or be subject to dismissal, while section 21167.1 gives a general trial preference to CEQA actions over all other civil actions. Patently, there is legislative concern that CEQA challenges, with their obvious potential for financial prejudice and disruption, must not be permitted to drag on to the potential serious injury of the real party in interest. Recognizing this potential for abuse, in *Citizens of Goleta Valley* v. *Board of Supervisors* (1990) 52 Cal.3d 553 [276 Cal.Rptr. 410, 801 P.2d 1161], the court, while repeating the language from *Laurel Heights* quoted above, also cautioned that CEQA was not to be "subverted into an instrument for the oppression and delay of social, economic, or recreational development and advancement." (At p. 576.)

Inevitably, however, the policy of encouraging environmental protection through the statutory mechanisms for challenging allegedly improper actions sometimes conflicts with the short times limits of CEQA and the policies served by such limits.

Where the law is clear, these strict requirements of CEQA are applied as written; in *Lee* v. *Lost Hills Water Dist.* (1978) 78 Cal.App.3d 630, 633-634 [144 Cal.Rptr. 510], for example, the court held a petition untimely even though the petitioner landowners asserted that they had never received notice of the action they wished to challenge.[5] In *Oceanside Marina Towers, supra*, the petitioners argued that the short period of section 21167, subdivision (b) did not bar their apparently tardy petition because the notice of negative declaration had been posted by the respondent city, rather than the redevelopment agency which was actually the "lead agency" in the project (see Pub. Resources Code, § 21067); the court found that as the city and the agency were essentially the same, the statute had begun to run at the time of posting, and the action was barred.

Nevertheless, it appears that, under certain circumstances, the courts have construed the unique procedural requirements of CEQA so as to permit the

---

[5]At that time, as the court observed, the statutes did not require specific notice to affected landowners.

maintenance of a challenge for noncompliance with CEQA despite some arguable failure by the petitioner to fulfill the Act's procedural requirements for the maintenance of such a suit, or the proffering of a colorable construction unfavorable to the petitioner. In *Concerned Citizens of Costa Mesa, Inc. v. 32nd Dist. Agricultural Assn.* (1986) 42 Cal.3d 929, 939 [231 Cal.Rptr. 748, 727 P.2d 1029], the court was faced with a situation in which the responsible public agency had duly prepared an environmental impact report, but then had approved substantial changes to the project without any notice to surrounding landowners. The landowners had not filed suit within the allowed 180-day period in which to attack a project after its commencement. However, the court permitted the action to proceed based on the assertion that the changes had not been reasonably apparent during the statutory period. It interpreted the apparently clear language[6] limiting challenges to a filing period of 180 days following commencement of a project, to provide an actual limitations period of 180 days *running from the time in which the substantial changes to the project reasonably became apparent.* In so holding, the court repeated the language from *Friends of Mammoth* quoted above, stressing the importance of interpreting CEQA statutes to give the "fullest possible" protection.

In *Concerned Citizens of Costa Mesa, Inc.*, the interpretation of Public Resources Code section 21167, subdivision (a) applied by the court was necessary to prevent an obvious injustice, as well as to discourage public agencies from similarly attempting to hide changes in approved projects and then claiming invulnerability from suit based on the short limitations period. Here, no factor of impropriety works against County and in favor of Temecula Ranchos. However, in other reported cases the courts have adopted interpretations favorable to petitioners when reasonable alternatives were proposed, and even where the petitioners have been at fault.

First, in *Citizens of Lake Murray Area Assn. v. City Council* (1982) 129 Cal.App.3d 436, 440-441 [181 Cal.Rptr. 123], the court held that the 30-day period established by Public Resources Code section 21167, subdivision (b) did not actually start to run until notice of the adoption of a negative declaration was posted—although, as in *Concerned Citizens of Costa Mesa, Inc.*, the statutory language was apparently clear in providing for an earlier triggering date, that is, upon filing of the notice alone. In *Mitchell v. Orange County* (1985) 165 Cal.App.3d 1185, 1192 [211 Cal.Rptr. 563], the court rejected the respondent County's argument that Public Resources Code section 21167.4, which requires a petitioner to "request a hearing within 90 days of filing the petition" meant that the hearing had to be *conducted or set* within that period; the court held that the statute only obligated the petitioner

---

[6]The court conceded that ". . . if the provisions of section 21167, subdivision (a), are applied literally, the action is barred." (42 Cal.3d at p. 937.)

to make the request within 90 days, not to see that the petition was actually calendared within that period. Finally, in *McCormick* v. *Board of Supervisors* (1988) 198 Cal.App.3d 352, 359-362 [243 Cal.Rptr. 617], the court held that a petitioner who failed to make the necessary request under section 21167.4, and who therefore suffered a mandatory dismissal, could nevertheless rely on Code of Civil Procedure section 473 in seeking relief from the dismissal.

In attempting to reconcile the two public policies, we conclude that if a statute is clear on its face and operates fairly, its unambiguous terms must prevail even if the result is to bar a CEQA challenge. (*Lee, supra,* 78 Cal.App.3d 630; Oceanside Marina Towers, *supra,* 187 Cal.App.3d 735.) However, if even a facially clear statute operates unfairly or might encourage deception, it should be construed in favor of the challenger. (*Concerned Citizens of Costa Mesa, supra,* 42 Cal.3d 929.) If reasonable minds may differ on the meaning of a CEQA provision or its application in light of other statutory provisions, any such conflicts and questions should be resolved in a manner which permits the challenge under CEQA to proceed. (*McCormick, supra,* 198 Cal.App.3d 352; *Mitchell, supra,* 165 Cal.App.3d 1185.)

B. *Interpretation of Section 21167.6(a) Regarding Service of the Petition*

█ Neither party appears to disagree with the principle that, for the purposes of obtaining personal jurisdiction and consistent with constitutional due process, service of a petition for an administrative writ of mandate must be in the same manner required for any civil action.

In fact, the statutes are far from clear. Code of Civil Procedure section 1107, which specifically governs service of writ petitions, states that if an application is made for the issuance of an alternative writ, ". . . the application shall be accompanied by proof of service of a copy thereof upon the respondent and the real party in interest named in such application. The provisions of Chapter 5 (commencing with Section 1010) of Title 14 of Part 2 shall apply to the service of the application." Section 1010 et seq. governs service of motions, and expressly permits simple service by mail as an alternative to personal service. (Code Civ. Proc., § 1012.) Thus, such service would presumably be sufficient if an alternative writ were sought.

However, Code of Civil Procedure section 1107 goes on to provide that if no alternative writ is sought, and the petition will be set for hearing, ". . . the action *may* be filed and served in the same manner as an ordinary action under Part 2 (commencing with Section 307)." Further muddying the issue is Code of Civil Procedure section 1016, which expressly provides that the more liberal *service of notice provisions* do not apply "to the service of a

summons or other process, or of any paper to bring a party into contempt." This statute's reference to contempt proceedings confirms the Legislature's intent that, as a rule, specific service procedures are necessary to establish jurisdiction in a mandate proceeding where an alternative writ is not sought. In other words, the statutes first appear to authorize acquisition of jurisdiction by "notice-service" if an alternative writ is sought; however, the statutes to which reference is made caution that such service is not sufficient to confer jurisdiction! The use of "may" in authorizing a party who does *not* seek an alternative writ to use the more formal service procedures applicable to commencing any civil action (e.g. Code Civ. Proc., § 412.10 et seq.) indicates a discretionary authorization; however, why would a petitioner elect to follow the more difficult procedures if notice-service was permissible for obtaining jurisdiction?

The confusion (which may exist only in our minds) may be cleared up by an examination of Code of Civil Procedure section 1096, which provides that a writ, including an alternative writ, must be served in the same manner as a summons in a civil action. Thus, although notice-service of the application is sufficient under Code of Civil Procedure section 1107 to obtain the alternative writ, personal service of an alternative writ is necessary before a trial or hearing can be had. In our view, the apparently optional use of the Code of Civil Procedure service of process procedures authorized by section 1107 for mandate proceedings where no alternative writ is sought, is in fact mandatory. At one stage or another, personal service of either the alternative writ or the petition must be made.[7]

Although the opinion in *Younger* v. *Jordan* (1954) 42 Cal.2d 757 [269 P.2d 616] does not discuss section 1107, we think the reminders therein are

---

[7]The concurring opinion argues that it is inconsistent to follow the service provisions of the Code of Civil Procedure at the same time that we interpret Public Resources Code section 21167.6 as superseding the statutes in that code governing the *time* in which service must be made, as we explain below. There is no inconsistency. Section 21167.6's clause "Notwithstanding any other provision of law" can only establish that statute's precedence over other statutes arguably covering the same subject matter; it cannot reasonably be construed as cancelling all other laws. While section 21167.6 sets forth rules for the *time* in which service must be made, it does not purport to govern the *manner*. Thus, we adhere to the standard rules contained in the Code of Civil Procedure which cover the manner of service.

We also note that although the concurring opinion uses the "Notwithstanding any other provision of law" language to support the conclusion that mailed service is sufficient, the concurrence's approach logically leads to the result that *no* particular form of service is required in CEQA cases. If "Notwithstanding any other provision of law" means that personal service is not required, why is even mailed notice needed—are not the statutes authorizing mailed notice similarly supplanted? Why cannot a CEQA petition be served by publication—or the dropping of flyers from an airplane?

Our point is that "service," in this context, is a term of art, and means nothing until it is defined by statute. The introductory clause of Public Resources Code section 21167.6 simply cannot be used to blot out the entire statutory framework for service of process, insofar as the statute does not provide alternate rules—as it does, of course, for *time* of service.

instructive. In that case, the court declined to rule on a petition because the real party had not been given notice either by personal service "or some form of substituted service which is authorized by law," referring to Code of Civil Procedure section 410 et seq. It is true that due process does not necessarily require that jurisdiction be obtained by personal service, even within a state. (See *Mullane* v. *Central Hanover Bank* (1950) 339 U.S. 306, 314-315 [94 L.Ed. 865, 873-874, 70 S.Ct. 652].) However, California has traditionally required personal service unless it is not possible after the exercise of due diligence. With the foregoing discussion in mind, we do accept the parties' implicit agreement that such service was necessary here for jurisdictional purposes.

 County's position is that Public Resources Code section 21167.6(a), being a jurisdictional statute, causes Temecula Ranchos's failure to personally serve the petition on it within the time limits of the statute to be fatal.

County relies on the language in the opening paragraph of Public Resources Code section 21167.6(a) to the effect that its provisions shall govern "notwithstanding any other provision of law." As set forth in footnote 1, *ante*, section 21167.6 contains several distinct provisions. Although it is not at all obvious that the general proviso was designed cancel out any specific statute, we agree that the provisions of section 21167.6 must prevail over *directly contradictory* provisions in other statutes. For example, Code of Civil Procedure section 1094.6, subdivision (c) gives a public agency 90 days in which to prepare the administrative record relevant to most administrative mandamus proceedings. Obviously, subdivision (b) of Public Resources Code section 21167.6, which requires preparation in 60 days, controls in CEQA matters.

Public Resources Code section 21167.6, subdivision (a), however, contains arguably two severable provisions, one relating to the filing of a request that the public agency prepare the administrative record, and the other to the service of the request and petition on the agency. Consequently, the subdivision as a whole does not have a direct counterpart over which it prevails. The subdivision requires the petitioner to file (presumably with the court) a request that the local agency prepare the administrative record. "The request, together with a copy of the petition, shall be served upon the public agency not later than 10 business days after the action is filed."[8] Subdivision (b) sets out the time limits for preparing the record, but *also* provides alternatives to the preparation by the local agency—for example, the

---

[8]Public Resources Code sections 21167-21168.5 in different contexts use the terms "action" or "proceeding" and "petition" or "complaint," even though it seems apparent that a basic CEQA challenge under section 21167 to approval of a project is one for administrative mandamus under Code of Civil Procedure section 1094.5.

petitioner may elect to prepare the record itself. In such a case, of course, a "Request to Prepare" under subdivision (a) would not be necessary. It is far from obvious that subdivision (a), which includes service of the petition itself almost as an afterthought to the service of the "Request to Prepare," was intended to provide the exclusive basis for service of the petition in a jurisdictional sense. The copy of the petition could just as reasonably be considered as essential to ensure that the local public agency knows what record is to be prepared.

The counter to this argument, which we find of considerable weight, is that the need for notice by the public agency of an impending CEQA attack under Public Resources Code section 21167 is already satisfied by section 21167.5, which requires the petitioner to serve by mail notice of the (intended) commencement of the action even before it is filed. This notice must identify the project being challenged. After receipt of that notice, the local agency would then know what record should be prepared when it received the "Request to Prepare." Under this view, the copy of the petition is not necessary to provide notice, and the requirement that it be served with the "Request to Prepare" may logically be viewed as referring to jurisdictional service.[9]

This conclusion is buttressed by the fact that a petitioner or plaintiff in a CEQA action is limited to those issues which were raised by objections in administrative proceedings or at similar hearings before the public agency. (Pub. Resources Code, § 21777; *Browning-Ferris Industries* v. *City Council* (1986) 181 Cal.App.3d 852, 859 [226 Cal.Rptr. 575].) Even if a public agency tentatively determines to issue a negative declaration, notice must be given and interested parties must be provided an opportunity to comment. (Pub. Resources Code, § 21092.)

Thus, a public agency does not need to see a copy of the petition in order to know what issues may be raised; although a CEQA petitioner or plaintiff may eliminate issues in its CEQA action, the public agency cannot be surprised by the addition of new objections. The service required by Public Resources Code section 21167.6 would be redundant if viewed as "mere notice."

County therefore argues (by implication, at least) that the "other provision of law," which does *not* apply with respect to service, is Code of Civil Procedure section 583.210, subdivision (a), which sets an outer limit of three years for service of a summons and complaint in a civil action.

The position of Temecula Ranchos is in part reflected in the discussion in part II A, *ante*. It relies both upon the public interest in CEQA compliance *and* the public interest in speedy resolution by arguing that the service

---

[9]It should be noted that in mandate proceedings, the traditional summons is not used. (See Code Civ. Proc., § 1096, simply providing for service of "the [alternative] writ," and the above discussion.)

requirements under discussion are intended merely to "facilitate" litigation and to provide prompt notice, while also contending that the failure to comply with such requirements does not result in a forfeiture of personal jurisdiction.

Temecula Ranchos argues that it would be unreasonable to require jurisdictional service within 10 business days of the filing of a petition. However, in light of the expedited procedures set forth in the Act, and in part detailed above, we do not agree that the Legislature could not logically have established an exceptionally short time in which to perfect service. It is to be noted that service on a public agency rarely presents the difficulties sometimes encountered in finding and personally serving an individual; the designated representatives for service (see Code Civ. Proc., § 416.50, subdivision (a)) may be assumed to be easy to find. Thus, service within 10 business days should in most cases be neither burdensome nor impracticable.

We observe that Temecula Ranchos's position requires the acceptance of one significant anomaly. Public Resources Code section 21167.6(a) requires service of a copy of the petition. If this is not jurisdictional service, what is the point of requiring *duplicative* notice-service within a short time span? Even if we were to agree that Code of Civil Procedure section 583.210, subdivision (a) governs, and allows a CEQA petitioner three years in which to achieve service, it is obvious that this lengthy time period is illusory because the time limits contained in CEQA itself compel jurisdictional service, if not within 10 business days, then at least within no more than a few weeks.[10] Under Temecula Ranchos's arguments, a CEQA petitioner must give notice of commencement of the action, then within 10 business days of filing the petition serve a "notice" copy of the petition, and then within no more than a few more weeks formally serve another copy of the petition to acquire jurisdiction. But if this is the case, either the section 21167.6 service is redundant as notice-service following the required notice under Public Resources Code section 21167.5, or a further, jurisdictional

---

[10]As mentioned above, a settlement conference must be held within 45 days of service, and a petitioner must request a hearing within 90 days of filing of the petition. It would be illogical to require that a petitioner request a hearing date until it is clear that settlement efforts have failed, and the statute also requires the parties jointly to prepare a post-settlement-conference statement; thus, if that procedure is to work smoothly, jurisdictional service could not possibly be made more than six weeks after filing. Furthermore, the public agency must prepare the record within 60 days of being served with the request to do so. It would in many cases be preferable that the petitioner's request for a hearing not be made until the record had been reviewed and the details of its arguments evaluated, so that a reasonable time estimate could be given. If the record is to be prepared within the 90 days in which a hearing must be requested, the Legislature reasonably could not have intended that service of the petition be made more than 30 calendar days after its filing. However, we decline either to establish by judicial fiat such a fixed outer limit, or to expressly approve any service made within this 30-day period.

service must follow swiftly upon the heels of the section 21167.6 service. We decline such a construction; we think it more reasonable not to assume that the Legislature intended to promulgate unnecessary blizzards of paperwork.[11] Finally, we reject any contention that the Legislature's use of the unqualified term "served" rather than "personally served" in section 21167.6 positively reflects an intent that such service is not designed for jurisdictional purposes. Although "personal service" does, of course, confer personal jurisdiction, it is not the only means by which such jurisdiction may be obtained. Where the statutory conditions are met, such jurisdiction is also conferred by substituted service, mailed service, or even service by publication. (See Code Civ. Proc., §§ 415.10-415.50.) Thus, the Legislature could not have used the term "personally served" to indicate jurisdictional service, because the term would have been improperly limited. Conversely, the *absence* of the word "personally" is not an indication that jurisdictional service is *not* intended.

In *Whitman* v. *Board of Supervisors* (1979) 88 Cal.App.3d 397, 404 at fn. 2 [151 Cal.Rptr. 866], the court held that the prefiling *notice* required by section 21167.5 was *not* jurisdictional and that failure to comply did not compel dismissal. The court also relied on the fact that the petitioner in that case had substantially complied with the requirement, so that no prejudice existed. However, *Whitman,* while consistent with those cases cited above which adopt liberal constructions of CEQA provisions in favor of a petitioner, is not persuasive with respect to a statutory requirement for service of the *petition* itself.

We conclude that Public Resources Code section 21167.6(a), read in light of the numerous other CEQA procedural provisions which require prompt prosecution and encourage speedy resolution of CEQA matters, does include the requirement for jurisdictional service of the petition in CEQA proceedings. Temecula Ranchos did not accomplish personal service (or any acceptable alternative method of service) of the petition on March 3, 1993. The service by mail did not conform to the requirements of Code of Civil Procedure sections 415.20 or 415.30. The statutory requirement for jurisdictional service, therefore, was not satisfied.

 This conclusion does not, however, lead automatically to the further result that County was entitled to have the purported services of the petition quashed and the action dismissed. Although the service is "jurisdictional" in

---

[11]It might be argued that unless the service prescribed by section 21167.6(a) confers jurisdiction, the public agency is not compelled to comply with the request to prepare the record. However, we think that the statutory mandate would suffice in this regard, although arguably a court could not enforce the duty by contempt or otherwise until personal jurisdiction was acquired.

the sense that it is intended to obtain and confer personal jurisdiction over the defendant, thereby enabling Temecula Ranchos to prosecute the action against the County, it is not "jurisdictional" in the sense that the court is deprived of the power to proceed if service is not timely completed in accordance with the statute.

As recounted above, Temecula Ranchos did personally serve its amended petition on County on March 29, 1993.[12] County argues that this was too late, and that the "window" for obtaining jurisdiction was closed. We disagree.

In general civil actions, service of summons must be made within three years. (Code Civ. Proc., § 583.210, subd. (a).) Failure to do so results in a mandatory dismissal of the action. (*Id.*, § 583.250.) The same time limit/mandatory dismissal coupling has been enacted to cover the failure to bring a civil action to trial or retrial within the specified periods. (*Id.*, §§ 583.310-583.320, 583.360.)

Similarly, Public Resources Code section 21167.4 provides that if the petitioner does not request a hearing within 90 days of filing a CEQA petition, the petition is "subject to dismissal." The statute has been construed as mandatory.[13] (*San Franciscans for Reasonable Growth* v. *City and County of San Francisco* (1987) 189 Cal.App.3d 498, 503 [234 Cal.Rptr. 527].) A petitioner's failure to participate in the settlement procedure also justifies dismissal unless good cause is shown. (Pub. Resources Code, § 21167.8, subd. (g).)

By contrast, no comparable statutory provision provides for a mandatory or discretionary dismissal by the court for the failure of petitioner to perfect service of the petition within the period prescribed by section 21167.6(a). We find this absence significant.

Code of Civil Procedure section 583.250, of course, mandates dismissal *only* for failure to comply with the article of which it is a part. As Public

[12]We have not been provided with a copy of this amended petition and therefore we cannot determine whether it differed from the original in any significant respect, or whether it represented only an effort to clarify or amplify the allegations of the original. We do recognize that amendment of a pleading with respect to an originally named party does not restart any mandatory time for service of summons. (*Nelson* v. *A.H. Robins Co.* (1983) 149 Cal.App.3d 862, 866 [197 Cal.Rptr. 179]; *Perati* v. *Atkinson* (1964) 230 Cal.App.2d 251, 253 [40 Cal.Rptr. 835].) We therefore cannot agree with the concurring opinion's position that the service of the amended petition "related back" to the filing date; we believe that the "relation back" doctrine applies only to the timeliness of a filing for the purpose of complying with the statute of limitations. It cannot be tenably argued that a party to a regular civil action who failed to serve the complaint for two years and eleven months could file an amended pleading and thereby obtain a new three-year period in which to complete service.

[13]But see *McCormick* v. *Board of Supervisors, supra,* 198 Cal.App.3d 352.

Resources Code section 21167.6(a) is not a part of that article, strict statutory construction requires the assumption that mandatory dismissal of the instant action for administrative mandamus, and declaratory and injunctive relief is not an available remedy. If the Legislature intends that the failure to comply with a specific and unusually short provision for service of process in a particular action *shall* result in an automatic dismissal, presumably it knows how to say so.

For example, Code of Civil Procedure section 863 requires that publication of summons in a quasi-validation action must be made within 60 days after the complaint is filed. Failure to do so requires dismissal, unless good cause is shown. However, this provision, with its discretionary exception, appears to recognize that the short period prescribed for service may cause hardship and inequity. (See *City of Ontario* v. *Superior Court* (1970) 2 Cal.3d 335, 342 [85 Cal.Rptr. 149, 466 P.2d 693], in which the court remarked that the strict time limits of the validation statutes imposed a "heavy burden" even on a "vigilant taxpayer.") Presumably, if the Legislature felt that a period of 60 days in which to achieve service might operate unreasonably or unfairly in some cases, it could consistently have believed that a period of 10 business days for jurisdictional service of a CEQA petition, while a salutary encouragement to the expedition of such actions, should not be rigidified into drastic effect by the remedy of dismissal.[14] Nor do we believe it justifiable to assume that the omission of such a provision was a mere legislative oversight. It is to be noted that subdivision (b) of Public Resources Code section 21167.6 requires, in similarly "mandatory" terms, that the public agency shall prepare the administrative record within 60 days of notification. However, the statute is silent as to the consequences of the agency's failure to do so. We assume that County would disagree with the position that a local agency which failed to comply would be subject to automatic default, and, in our view, that remedy would be too severe. In this case, County argues for an analogous mandatory sanction of dismissal of the

---

[14]We also note that Code of Civil Procedure section 415.20, subdivision (a) provides that jurisdictional service may be made on a public agency not only by personal service on a designated representative (see Code Civ. Proc., § 416.50), but also, as a valid alternative method in the first instance, by leaving a copy of the summons and complaint in the office of the person to be served, and then mailing a copy to that address. However, such service is not deemed complete until 10 days after the mailing. If Public Resources Code section 21167.6(a) were strictly construed to include the implicit remedy of dismissal, service by this method would be extremely difficult to complete in a timely manner. Service by the "acknowledgment and receipt" method permitted by Code of Civil Procedure section 415.30 could never be employed, because the responding party may delay acknowledgement for 20 days from date of mailing; thus, the plaintiff facing the section 21167.6(a) limit would run the risk that the time for service might expire and that the responding party would in fact *not* respond, thus making the service legally ineffective.

We have construed Public Resources Code section 21167.6 in a manner which allows these allowable service alternatives to be useful in CEQA actions.

action, which remedy is not expressly provided by the Legislature and we decline to create it.[15]

We hold that the time requirements of Public Resources Code section 21167.6(a), while they do apply to jurisdictional service of the petition on the public agency, do not implicitly include mandatory dismissal if such service is not made within such limits. While the purposes of CEQA are not served by dilatory prosecution (*Citizens of Goleta Valley* v. *Board of Supervisors, supra* 52 Cal.3d 553), neither are they served by a draconian sanction for a violation of a service of process requirement which causes no real harm to the respondent to a section 21167 action.

The statute's omission of the remedy of mandatory dismissal of the CEQA action does not, however, mean that a defendant is entirely without recourse for tardy service of the petition. As discussed above, a petitioner bringing a CEQA action cannot unduly delay service of the petition if it is to meet the other time limits of the Act. In most cases, these limits will suffice to ensure that prosecution is diligent and speedy, and that the respondents are not prejudiced by delay. However, we do not condone delays in the service ordered by Public Resources Code section 21167.6, and the courts may properly scrutinize the excuses for such delay if a respondent raises a proper challenge.

■ The courts of this state have a broad inherent power to control, supervise, and administer matters before them. Although this power is

[15]The concurring opinion argues that we *must* accept dismissal as the logical consequence of our holding that Public Resources Code section 21167.6 provides for "jurisdictional service." As we pointed out above, the term "jurisdictional" can be used in two senses. The fact that jurisdiction is not acquired over a party within a specified time does not deprive the court of jurisdiction to proceed with the case. In *Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714, 721, footnote 3 [170 Cal.Rptr. 790, 621 P.2d 829], the court held explicitly that the failure to complete summons in a timely matter is not jurisdictional in the sense that the failure deprives the court of the power to act (although its power may be limited to determining whether an exception to the dismissal rule has been established). There is nothing conceptually unusual about viewing a statute as mandatory, but not jurisdictional.

When dismissal is mandated for the failure to take a procedural step, the Legislature ordinarily provides an avenue for relief, whether based on "good cause" (see Code Civ. Proc., § 863) or specific and detailed exceptions. (See, e.g., Code Civ. Proc., §§ 583.230-583.240, creating exceptions and tolling provisions to the mandatory time in which to effect service of process.) We can hardly be more strict in considering how to deal with a failure to take a required step when the Legislature has omitted to provide either a sanction or the grounds for relief from such a sanction.

It is true that the failure to take some mandatory steps cannot be the subject of relief under Code of Civil Procedure section 473—the model for the relief we authorize here. In *Wilcox* v. *Ford* (1988) 206 Cal.App.3d 1170, 1175-1179 [254 Cal.Rptr. 138], for example, the court held such relief unavailable to excuse a failure to bring the action to trial within five years. However, this rule is based upon the recognition that where the Legislature has provided specific exceptions to a time limit, it is inappropriate to engraft other exceptions through the application of section 473. It need not be applied in the absence of both a statutory sanction and mode of relief.

partially codified in Code of Civil Procedure section 128, it is not limited by the statute and derives from the state Constitution, as based upon the historic powers of the courts. (*Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 635-636 [150 Cal.Rptr. 461, 586 P.2d 942].) Courts are thus authorized to fashion new remedial procedures when it is advisable to do so, in order to deal with new issues or protect the rights of the parties. (*Cottle* v. *Superior Court* (1992) 3 Cal.App.4th 1367, 1377 [5 Cal.Rptr.2d 882].)

In the case before us, it is apparent that the Legislature intended to constrain a CEQA petitioner to accomplish prompt service of the petition. We have briefly noted above the practical fact that service within 10 business days may not always be possible; however, we believe that if a respondent challenges the service on the basis of untimeliness, the court should require petitioner to explain the delay. In some cases, good cause for the failure may genuinely exist; in others, the delay may have resulted from an excusable oversight. (See *McCormick* v. *Board of Supervisors, supra,* 198 Cal.App.3d at pp. 359-362, holding the remedial provisions of Code of Civil Procedure section 473 applicable to a mandatory dismissal resulting from a CEQA plaintiff's failure to request a hearing within 90 days of filing.) The court should then weigh any proffered excuse against any showing by respondent of prejudice to it which is attributable to the untimeliness of the service.[16]

In the sound exercise of its discretion, the court may then impose such a remedial sanction, if any, as may be necessary to cure the effects of delay, including the ultimate remedy of dismissal of the action, keeping always in mind the dual principles of facilitating CEQA litigation in the public interest, while protecting the rights of respondents from abusive tactics.

If the court should determine that a defendant (or real party) suffered irreparable harm from a delay in service, the remedy would be to quash

---

[16]In its traverse, County asserts that it (and the project developer) has suffered substantial prejudice due to Temecula Ranchos's delay. It contends it was prejudiced by the lack of personal service of the petition on it because this precluded it from promptly noticing a mandatory settlement conference under Public Resources Code section 21167.8. County makes no effort to detail how the brief delay in accomplishing personal service had any prejudicial effect, where it is not disputed that County had been properly notified of Temecula Ranchos's intent to sue and had been in regular contact with petitioner's counsel since March 11 concerning the preparation of the record and possible settlement conferences. County made no better showing of prejudice below, and we find its statements inadequate to raise the issue.

We reject County's argument that we should consider the delay occupied by these proceedings from the date its motion to quash was filed; although County was entitled to make such a motion and to seek review of the trial court's ruling, it cannot fairly complain about the delay so caused. Such an approach would encourage parties to make such motions, seek immediate review of adverse rulings, and then to procrastinate in the prosecution of such review proceedings in an attempt to create prejudicial delays.

service and then dismiss the action. If the court finds that good cause or excusable neglect outweighs any prejudice to respondent, it shall order the litigation to proceed despite the tardy service. It would be an idle act to quash the service despite its technical impropriety. What is the point in quashing a late service merely to require a *second* late service? Therefore, if the court determines that the lawsuit should continue, on whatever terms or conditions it may impose as a remedy for the late service, quashal is improper. ■ Here, the trial court reached the correct result by refusing to quash service and dismissing the action, although its reasoning was erroneous.

We conclude that in this case, Temecula Ranchos acted out of an excusable mistake of law, as the closeness of the question here demonstrates and County utterly failed to demonstrate any prejudice to it from not being personally served with a copy of the petition within 10 business days of the filing of the petition. It would be a fruitless act for us to grant the petition, order the trial court to grant the motion to quash and then to conduct a hearing consistent with the foregoing discussion for the purpose of making a determination whether a remedial sanction was proper for the untimely service of the petition.

The alternative writ having served its purpose, it is hereby discharged. The petition for writ of mandate/prohibition is denied.

Dabney J., concurred.

**HOLLENHORST, J.**—I concur in the result but I completely disagree with the reasoning of the majority opinion. The majority has misconstrued Public Resources Code section 21167.6, subdivision (a) to reach a result which *jurisdictionally* limits the time within which a mandate petition alleging a California Environmental Quality Act (CEQA) violation may be served to 10 days. In my view, such a narrow holding is not compelled by Public Resources Code section 21167.6, subdivision (a) or any other provision of law.

I read the majority opinion to rest on the following conclusions:

1. Public Resources Code section 21167.6, subdivision (a) includes a requirement for jurisdictional service in CEQA proceedings.

2. The term "service," as used in Public Resources Code section 21167.6, subdivision (a), means personal service (or an acceptable alternative method of service).

3. The failure to personally serve the original complaint within 10 days affects the validity of a timely filed and served amended complaint.

4. Notwithstanding the failure to obtain jurisdiction, dismissal is not required if petitioner acts out of an excusable mistake of law.

I disagree with each of these conclusions.

1. *Public Resources Code Section 21167.6, Subdivision (a) Does Not Contain a Requirement for Jurisdictional Service.*

The underlying action consisted of a petition for writ of mandate and a complaint for declaratory and injunctive relief. The writ was brought to review the administrative decision pursuant to Code of Civil Procedure sections 1085 and 1094.5.

Service of the writ petition was therefore governed by Code of Civil Procedure section 1107: "When an application is filed for the issuance of any prerogative writ, the application shall be accompanied by proof of service of a copy thereof upon the respondent and the real party in interest named in such application. The provisions of Chapter 5 (commencing with Section 1010) of Title 14 of Part 2 shall apply to the service of the application. However, when a writ of mandate is sought pursuant to the provisions of Section 1088.5, the action may be filed and served in the same manner as an ordinary action under Part 2 (commencing with Section 307)." Accordingly, California Rules of Court, rule 56(b) provides that the petition shall be accompanied by proof of service on both the respondent and the real party in interest and local rule 1(b) of the Fourth Appellate District requires personal service in all original proceedings except for good cause shown. The majority opinion therefore concludes that "[a]t one stage or another, personal service of either the alternative writ or the petition must be made." (Maj. opn., *ante*, p. 840.)

The majority holds that although these sections apply to the *manner* of service, they are overridden in CEQA actions as to the *time* of service by Public Resources Code section 21167.6, subdivision (a). That subdivision provides: "Notwithstanding any other provision of law, in all actions or proceedings brought pursuant to Section 21167 . . . [¶] (a) At the time the action is filed, the petitioner shall file a request that the respondent public agency prepare the record of proceedings relating to the subject of the action or proceeding. The request, together with the petition, shall be served upon the public agency not later than 10 business days after the action is filed."

Public Resources Code section 21167 provides shortened time limits for CEQA actions. As the majority opinion points out, these requirements reflect

a concern that CEQA actions be filed promptly and prosecuted diligently. However, the majority concedes that Public Resources Code section 21167.6, subdivision (a) is at least ambiguous and that we must therefore attempt to construe the intent of the Legislature to effectuate the purpose of the law.

The majority undertakes this task by first pointing out the repeated admonitions of our Supreme Court that CEQA is " 'to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.' " (*Laurel Heights Improvement Assn.* v. *Regents of the University of California* (1988) 47 Cal.3d 376, 390 [253 Cal.Rptr. 426, 764 P.2d 278], quoting *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].)

Having stated the proposition, the majority fails to apply it on grounds that the defect was procedural, not substantive. Nevertheless, neither CEQA nor our Supreme Court differentiates between substantive and procedural defects. The result of a narrow interpretation is the same in either case—the environment is left unprotected.

Public Resources Code sections 21000 through 21003 state the purposes of CEQA in detail, and we need not repeat them here. The point is that the overall purpose of protection of the environment is not served if an ambiguous statute is construed in such a way as to foreclose judicial review of environmental decisions.

The majority relies on the fact that CEQA provides unusually short limitations periods in which actions must be brought. Thus, Public Resources Code section 21167 provides for a 30- to 180-day period in which to bring an action. Such actions are also given statutory preference in the hearing or trial (Pub. Resources Code, § 21167.1) and they may be dismissed if they are not filed within the required time (Pub. Resources Code, § 21167.2).

In view of the potentially significant costs which may be incurred when a project is delayed, the requirement that actions be filed within a short period of time and prosecuted diligently is not unreasonable. Thus Public Resources Code section 21167.4 requires the petitioner to request a hearing within 90 days of filing the petition, and Public Resources Code section 21167.6 requires the petitioner to request preparation of the record within 10 days of filing of the petition.

The only section dealing specifically with service, Public Resources Code section 21167.5, requires only that proof of written notice of commencement

of the action be given to the agency and filed with the initial pleading. This section, which was complied with in this case, has been said to establish merely a notice requirement, not a jurisdictional requirement (*Whitman* v. *Board of Supervisors* (1979) 88 Cal.App.3d 397, 404, fn. 2 [151 Cal.Rptr. 866].)

The same should be true of Public Resources Code section 21167.6. On its face, it deals with preparation of the record within 60 days. Even the request for preparation is not mandatory, for the petitioner may elect to prepare the record itself, or the parties may agree to an alternative method of preparation under subdivision (b). If the request is not mandatory, how can service of the request, together with the petition, be mandatory?

The majority finds the service requirement to be not only mandatory, but jurisdictional. It elevates an alleged requirement that the request for preparation of the record, together with the petition, be served within 10 days to a jurisdictional requirement for the prosecution of the CEQA action. By thus adding a very short-fuse requirement to the already short time in which a CEQA action may be brought, the majority undercuts and ignores the very purpose of CEQA, which is to allow judicial review to ensure that the agency has considered the environmental effects of its action. The majority does so even while conceding that "[t]he copy of the petition could just as reasonably be considered as essential to ensure that the local public agency knows what record is to be prepared."

I would select the reasonable interpretation which *is* in accordance with the statutory purpose and find that Public Resources Code section 21167.6, subdivision (a) is not a jurisdictional service requirement but rather a notice provision.

2. *Public Resources Code Section 21167.6, Subdivision (a) Does Not Contain a Requirement for Personal Service.*

After concluding that Public Resources Code section 21167.6, subdivision (a) contains a jurisdictional service requirement, the majority leaps to the conclusion that the service required is personal service. It does so by distinguishing between the time and the manner of service. It applies the Code of Civil Procedure personal service sections together with the Public Resources Code time limits to create a requirement for personal service of the petition within 10 days.[1]

Since the majority finds that the introductory phrase "notwithstanding any other provision of law" preempts the Code of Civil Procedure service

---

[1]The majority concedes that, although the phrase "notwithstanding any other provision of law" at the beginning of Public Resources Code section 21167.6 would have the effect of

provisions in CEQA actions, it should logically disregard the Code of Civil Procedure in interpreting the allegedly special jurisdictional requirement of Public Resources Code section 21167.6, subdivision (a). If it did so, it would find that petitioner "served" the petition within the meaning of the subsection by mailing a copy of the petition to the agency within 10 days, as required by the subsection.

Nothing in the subdivision requires personal service, and the term "service" is generally used as an inclusive term to mean personal, constructive, mail, publication or other substituted service. (Black's Law Dict. (5th ed. 1979) pp. 1227-1228.) In terms of the purported legislative intent discussed by the majority, it can be argued that, if the Legislature did select a very short-fuse service requirement, it allowed, as a trade-off, a less formal method of service on a public agency, i.e., service by mail.

The majority thus applies the Code of Civil Procedure when it suits the result the majority seeks to reach, and disregards the Code of Civil Procedure when it finds it convenient to do so. It does so by artificially separating the time for service from the method of service.

If Public Resources Code section 21167.6, subdivision (a) is to stand alone as a special jurisdictional statute requiring service of CEQA actions within 10 days of filing of the action, I would hold that deposit of the petition in the mail within 10 business days of the filing of the action is sufficient "service" to comply with the section.

I reiterate, however, my basic conclusion that Public Resources Code section 21167.6, subdivision (a) merely requires the requisite request that the public agency prepare a record of the proceedings relating to the subject of the action to be accompanied by a copy of the petition. In this way, the agency is given notice of the record which is to be prepared.

3. *The Majority Fails to Consider the Effect of the Amended Petition.*

Without discussion, the majority rejects the county's contention that service of the amended petition on March 29, 1993, was untimely because

---

prevailing over directly contradictory provisions in other statutes, the subdivision in issue here "does not have a direct counterpart over which it prevails." (Maj. opn., *ante*, p. 841.) Nevertheless, the majority finds that the phrase eliminates the Code of Civil Procedure time restrictions for service, but not the sections specifying the manner of service.

the "window" for obtaining jurisdiction had closed.[2] The majority therefore apparently concludes that a valid service could be made at a later date.

If valid service could be made at a later date, the service was timely. The amended petition was filed on March 23, 1993, and served on March 29, 1993, less than 10 days later. This service therefore satisfied even the majority's restrictive view of service under Public Resources Code section 21167.6, subdivision (a). Significantly, the county did not even request that the service made on March 29th be rejected. Instead, it argued that the "window" for service was closed, a position the majority rejects.

The only reason valid service could not be made at the later date would be because the filing of the amended petition would not be timely under the 30-day limitations period set forth in Public Resources Code section 21167. However, such a petition was timely because the amended petition related back to the original filing date for statute of limitations purposes.[3] "While it is true that an amended complaint supersedes the original, the time of filing the original complaint is still the date of commencement of the action for purposes of the statute of limitations, except where a wholly different cause is pleaded in the amended complaint." (*Walton* v. *Guinn* (1986) 187 Cal.App.3d 1354, 1360 [232 Cal.Rptr. 451].)

Since the original petition was filed within the 30-day period specified in Public Resources Code section 21167, the action was timely commenced. Assuming that the amended petition contained the same cause of action, I would find that the subsequent filing of the amended petition related back to the time of filing of the original petition. The amended petition was therefore timely filed.

Even if we apply the majority's theory that the petition had to be personally served within 10 days of filing, the amended petition *was* personally served within a 10-day period following the filing of the amended petition. This personal service was not challenged by the motion to quash service. Thus, even if Public Resources Code section 21167.6 contains a jurisdictional service requirement, that requirement was met by the timely personal service of the amended petition.

---

[2]The only discussion is in the context of the conclusion that, although the alleged statutory requirement for jurisdictional service was not satisfied, there was no statutory basis for dismissal of the action.

[3]From correspondence in the administrative record, it appears that the differences between the original petition and the amended petition were that the original petition requested that Riverside County Resolution No. 92-565 be set aside in its entirety. The correspondence suggested that this attack was too broad because the resolution adopted all fourth cycle comprehensive general plan amendments for 1992. The amended petition then focused on one of those amendments (CGPA 254), the land-use approvals and the negative declaration for the project here. It therefore appears that the only differences between the two petitions is that the amended petition narrows the focus of the attack to the approvals for this project alone.

Nevertheless, despite my disagreement with the majority on this issue, I reemphasize my belief that Public Resources Code section 21167.6 does not contain a jurisdictional service requirement. As a result, I believe that the filing and personal service of the amended petition was sufficient to obtain jurisdiction over the agency in a timely manner under the normal service rules.

4. *There Is No Statutory Basis for the Majority's Conclusion That a Jurisdictional Requirement Can Be Overlooked If Petitioner Acts out of an Excusable Mistake of Law.*

The majority, having found that the alleged statutory requirement for jurisdictional service was not satisfied, refuses to follow its own logic and dismiss the petition.

Perhaps my strongest disagreement with the majority arises from this refusal. The majority, immediately after stating that it declines to create a dismissal remedy because the Legislature has not provided for dismissal, proceeds to create its own remedy.[4] Specifically, the majority finds that "[c]ourts are thus authorized to fashion new remedial procedures when it is advisable to do so, in order to deal with new issues or protect the rights of the parties." (Maj. opn., *ante*, p. 848.)

In brief, the majority's new procedure requires the respondent to move to dismiss on failure of service grounds, the petitioner to state its reasons for failing to do so, and the court to weigh the excuse against prejudice resulting from untimely service and exercise its discretion to conclude whether there was an excusable mistake or not. Applying this new procedure retroactively to this case, without an actual hearing, the majority concludes that the trial court was right for the wrong reason and that Temecula Ranchos acted out of an excusable mistake of law.

To state the proposition is to refute it. This completely invented procedure, applied retroactively on the basis of speculative and assumed facts, is totally inappropriate. I would find that the trial court acted correctly in denying the county's motion because Public Resources Code section 21167.6 is purely a procedural notice statute. Although I agree that there has been a mistake of law in this case, it has not been the mistake of Temecula Ranchos or the trial court.

---

[4]The majority states that it is not justifiable to assume that the failure to provide a dismissal remedy was a mere legislative oversight. I agree. I think it more likely that the Legislature did not provide for dismissal because it did not think it had created a requirement for jurisdictional service when it enacted Public Resources Code section 21167.6, subdivision (a). The absence of a dismissal provision thus supports the position that the subdivision is a notice statute, not a jurisdictional statute.

I concur in the judgment only. I would also award costs of this proceeding to Temecula Ranchos.